William BIGGS, et al., Plaintiffs–
Appellants–Cross–Appellees,

v.

Pete WILSON, Governor; Kathleen
Brown, Treasurer; Gray Davis, Controller, et al., Defendants–Appellees–Cross–
Appellants.

Nos. 92–15334, 92–15936.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1993.

Decided Aug. 12, 1993.

Joe R. McCray and Roberta D. Perkins, Joe R. McCray, a Law Corp., San Francisco, CA and Cathy A. Neff, Deputy Atty. Gen., Sacramento, CA, for plaintiffs-appellants-cross-appellees.

Christopher W. Waddell, Chief Counsel, Dept. of Personnel Admin., Sacramento, CA, for defendants-appellees-cross-appellants.

Gary M. Messing and Cathleen Williams, Carroll, Burdick & McDonough, Sacramento, CA, for amicus curiae California Correctional Peace Officers Ass'n, et al.

Craig Becker, U.C.L.A. Law School, Los Angeles, CA, for amicus curiae Service Employees Intern. Union, AFL–CIO.

Before: REINHARDT, TROTT, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

■ This appeal requires us to decide whether California violated the minimum wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, by paying wages 14–15 days late because there was no state budget, and thus no funds appropriated for the payment of salaries, on payday. The district court granted a summary judgment declaring that the failure to issue paychecks promptly when due violated the FLSA. We agree, and hold that under the FLSA wages are "unpaid" unless they are paid on the employees' regular payday.

## I

Payday in this case—July 16, 1990 [1]—came and went without highway maintenance workers employed by the State of California Department of Transportation being issued their pay checks. California was undergoing one of its perennial rites, the budget impasse. In 1990, State law prohibited the release of paychecks until a budget was approved by the Legislature and signed by the Governor. That didn't happen until July 28, when the budget passed the Legislature, and July 31, when then-Governor Deukmejian signed it into law. The payroll was met on July 30 and 31, 14–15 days late.

William Biggs represents a class of highway maintenance workers who brought suit against the Governor, Treasurer, Controller, and Transportation Director (collectively "state officials"). The class seeks injunctive and declaratory relief, liquidated damages, and prejudgment interest on account of the delay in receiving wages.

Both sides moved for summary judgment. The district court filed a memorandum and order on October 3, 1991 in which it denied injunctive relief but declared that the state officials' failure to issue paychecks to the class promptly when due violated the Fair Labor Standards Act.[2] It refused to award liquidated damages pursuant to 29 U.S.C. § 216(b) for two reasons: because the liability under § 216(b) extends to an employer and the employer in this case, the State of California, was not named as a party; and because the state acted in good faith. Biggs's request for prejudgment interest was granted.

State officials now appeal [3] the district court's October 3, 1991 order, raising two issues: whether the FLSA contains an implicit requirement that wages be paid promptly, and if so, does it violate the State of California's Tenth Amendment sovereignty.[4] No appeal is taken from the award of

---

1. Both sides concede that this was the employees' payday. Therefore, we do not comment on how to define an employee's payday.

2. We assume that the declaratory relief granted is, as stated in the order portion of the district court's memorandum and order, as follows: "It is therefore declared that defendants' failure to issue plaintiffs' paychecks when due violates the Fair Labor Standards Act."

3. The district court ruled against Biggs on several procedural matters. Biggs's appeal from these rulings is resolved in a separate, unpublished memorandum disposition (No. 92–15334). This appeal concerns only No. 92–15936.

4. The California Correctional Peace Officers Association, the California Union of Safety Employees, and the California Department of Property Employees Association; and the Service Employees International Union, AFL–CIO have appeared as amici curiae in support of Biggs.

prejudgment interest. Both sides agree that there are no material factual disputes, and that our review is de novo. We have jurisdiction pursuant to 28 U.S.C. § 1291.[5]

## II

The FLSA requires that an employer pay each employee a minimum wage set by the Act. 29 U.S.C. § 206. Section 206(b) mandates that "every employer shall pay" employees the minimum wage if "in any workweek [the employee] is engaged in commerce." [6]

State officials contend that the district court erred by concluding that the FLSA contains an implicit requirement that wages be paid promptly when due. Without arguing that payment in this case was in fact "prompt," they urge that the district court's conclusion is not supported by case law, and that the absence of a body of case law regarding prompt payment demonstrates that there is no implied prompt payment requirement. State officials also argue that since full compensation was never in doubt, and California was merely late in paying its employees, there was no violation of the FLSA. In effect, their position is that only nonpayment, not late payment, is prohibited by the Act.

Biggs and amici, on the other hand, argue that the FLSA requires paychecks to be paid on regular paydays. Therefore, in their view, late payment, as well as nonpayment, violates the Act.

### A

■ State officials correctly point out that the FLSA does not in terms say that a minimum wage must be paid promptly. It simply says that employers "shall pay" a

minimum wage. However, in construing the FLSA, we must be mindful of the directive that it is to be liberally construed to apply to the furthest reaches consistent with Congressional direction. *Mitchell v. Lublin, McGaughy & Assoc.*, 358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243 (1959).

■ This case requires us to consider the obligation to pay in light of the statutory scheme as a whole. The FLSA provides for the recovery of unpaid minimum wages, unpaid overtime compensation,[7] and liquidated damages; and has its own statute of limitations for private enforcement. These provisions necessarily assume that wages are due at some point, and thereafter become unpaid.

We start with § 206(b). It directs every employer to pay the minimum wage. The obligation kicks in once an employee has done covered work in any workweek. To us, "shall pay" plainly connotes shall make a payment. If a payday has passed without payment, the employer cannot have met his obligation to "pay."

Section 216(b) then provides that an employer who violates § 206 is liable to the affected employees "in the amount of their unpaid minimum wages, or their unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Unless there is a due date after which minimum wages become unpaid, imposing liability for both unpaid minimum wages and liquidated damages would be meaningless.

The statute must therefore contemplate a time at which § 206 is violated, or, put another way, when minimum wages become "unpaid." "Unpaid minimum wages" have to be "unpaid" as of some distinct point, otherwise courts could not compute either the amount

---

5. No separate judgment was entered on the district court's October 3, 1991 order, which would have been helpful because it is not entirely clear against whom the order runs. However, neither party complains and the fact that an appeal is taken prematurely from an order, rather than a judgment, is not fatal to our jurisdiction. *Banker's Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978).

6. 29 U.S.C. § 206(b) provides:

‧ Every employer shall pay to each of his employees (other than an employee to whom subsection (a)(5) of this section applies) who in any workweek is engaged in commerce or in the production of goods for commerce ... wages at the following rate: ... not less than the minimum wage.

7. The Act also requires employers to pay overtime compensation, 29 U.S.C. § 207(a)(1), and the provisions for liability apply to overtime as well as to a minimum wage.

of wages which are unpaid, or the additional "equal" amount of liquidated damages. The only logical point that wages become "unpaid" is when they are not paid at the time work has been done, the minimum wage is due, and wages are ordinarily paid—on payday. *Cf. Olson v. Superior Pontiac–GMC, Inc.,* 765 F.2d 1570, 1579 (11th Cir.1985) ("the employee must *actually receive* the minimum wage each pay period," emphasis original), *modified,* 776 F.2d 265 (11th Cir. 1985).

Similarly, employers violating the FLSA must pay prejudgment interest on the overdue wages. *Ford v. Alfaro,* 785 F.2d 835, 842 (9th Cir.1986) ("in the absence of a liquidated damages award, prejudgment interest is necessary to fully compensate employees for the losses they have suffered."). Prejudgment interest cannot be calculated without an amount certain owing from a day certain. As with "unpaid wages" and liquidated damages on "unpaid wages," the only logical point from which to compute the amount of interest is the day the employee's paycheck is ordinarily due. Any other time would be inconsistent with the purpose of prejudgment interest, to make it unattractive for the employer to take advantage of cash flow at the employees' expense, and to make up for the employees' loss of use of funds during the period they were due but unpaid.

Finally, the FLSA contains its own statute of limitations for an action for unpaid minimum wages and for liquidated damages. 29 U.S.C. § 255(a).[8] Statutes of limitation have to start running from some point, and the most logical point a cause of action for unpaid minimum wages or liquidated damages (which are merely double the amount unpaid) accrues is the day the employee's paycheck is normally issued, but isn't. *See Beebe v. United States,* 640 F.2d 1283, 1293, 226 Ct. Cl. 308 (1981) (FLSA claims are continuing claims and a separate cause of action "accrues" every payday that overtime is not paid); *McIntyre v. Dir. of Youth Rehab.,* 795 F.Supp. 668, 674 (D.Del.1992) (courts have adopted uniform approach under *Beebe* that

cause of action accrues each paycheck); *see also Cook v. United States,* 855 F.2d 848, 851 (Fed.Cir.1988) (general rule is that FLSA claims accrue at the end of each pay period); *Mid–Continent Petroleum Corp. v. Keen,* 157 F.2d 310, 316 (8th Cir.1946) (accrues each payday); *accord Aronsen v. Crown Zellerbach,* 662 F.2d 584, 593 (9th Cir.1981) (statute of limitations for Title VII and Age Discrimination suits runs from day employee should know employer violated law), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983).

State officials urge us to distinguish between late payment and nonpayment, but offer us no principled way to make such a distinction. We cannot come up with one either. We could try to create a balancing test, as the district court did when it wrote that the FLSA "require[s] payment which is reasonably prompt under the totality of the circumstances in the individual case." Any kind of sliding scale we can think of, however, would be contrary to the statute's direction that employers shall "pay" the minimum wage and that employees are entitled to recover "unpaid" minimum wages. It also would force employees, employers, and courts alike to guess when "late payment" becomes "nonpayment" in order to determine whether the statute of limitations has begun to run, the amount of unpaid wages and liquidated damages to be awarded, and how much prejudgment interest has been accrued. The due date, and with it when the employee actually gets paid, would become a moving target. Such a framework would contravene our obligation to construe the FLSA to the furthest reaches consistent with Congress's intent to protect employees, *Mitchell,* 358 U.S. at 211, 79 S.Ct. at 264, and run counter to the purpose of the FLSA to "protect certain groups ... from substandard wages and excessive hours." *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945).

State officials nevertheless argue that the statute of limitations, prejudgment interest,

---

8. Section 255(a) provides: "Any action ... to enforce any cause of action for unpaid minimum wages, unpaid overtime, or liquidated damages ... shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years." 29 U.S.C. § 255(a).

and liquidated damages provisions do not need to begin on the same day at which a violation occurs. We do not see how. If employees had a right to recover only at the point of nonpayment (as opposed to late payment), but the period of limitations began running as of the employee's payday, the statute would start running before an employee had a right to recover. That cannot be correct.

State officials do not explain when or how "late payment" metamorphoses into "nonpayment" such that the Act is violated and the employer is exposed to liability for unpaid minimum wages and additional compensation by way of liquidated damages. Likewise, it is unclear on their theory how many paychecks an employee has to miss before filing suit, being able to show a violation, and recovering liquidated damages or prejudgment interest. Nor do we agree with their suggestion that a rule that paychecks are due on payday unfairly penalizes employers who happen to be late in paying their employees. An employer who acts in good faith is not subject to liquidated damages, 29 U.S.C. § 260. While the employer remains obligated to pay overdue wages and is subject to prejudgment interest on the unpaid wages in the event of litigation, this result properly deters employers from "gamb[ling] on evading the Act" as they could if the remedy were only liability of the amount originally due. *O'Neil,* 324 U.S. at 709, 65 S.Ct. at 903.

Thus, state officials' argument for why the absence of an explicit prompt payment obligation means that wages need not be paid promptly, without enhanced compensation by way of liquidated damages or prejudgment interest, is unpersuasive.

**B**

Holding that the FLSA is violated unless the minimum wage is paid on the employee's regular payday also comports with such case law as there is. Although not directly on point, we find it difficult to read *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) without concluding

that an employer violates the Act if payments are late. In *O'Neil,* an employee accepted a delayed payment of wages from his employer, and waived the right to receive liquidated damages. The Supreme Court held that claims for liquidated damages could not be waived. It rejected the employer's argument—similar to state officials' here—that the right to liquidated damages arises only if the employee is compelled to sue for minimum wages due, holding instead that the employer is liable for liquidated damages in an amount equal to minimum wages "overdue" whether the employer is in default at the time suit is begun or not. 324 U.S. at 711, 65 S.Ct. at 904.

*O'Neil* repeatedly referred to the employer's obligation to pay employees on time. For example, the court wrote that the liquidated damages provision "constitutes a Congressional recognition that failure to pay the statutory minimum *on time* may be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency, and general well-being of workers' and to the free flow of commerce, that double payment must be made *in the event of delay* in order to insure restoration of the worker to that minimum standard of well-being." *Id.* at 707, 65 S.Ct. at 902 (emphasis added). *See also id.* (reparations are necessary for "failure to pay *on time,*" emphasis added); *id.* at 709, 65 S.Ct. at 903 (employee has right to "recover damages from *delay* in payment," emphasis added); *id.* at 707 n. 20, 65 S.Ct. at 902 n. 20 ("prompt payment to workers has long been recognized by Congress").

If, as state officials argue, late payment does not violate the FLSA, then there should have been no liquidated damages in *O'Neil* because the late payment there, through settlement, made up the difference. That the employee was entitled to recover liquidated damages even after being reimbursed to meet the minimum wage indicates that the minimum wage must be paid promptly.[9] *See also D.A. Schulte, Inc. v. Gangi,* 328 U.S. 108, 116, 66 S.Ct. 925, 929, 90 L.Ed. 1114 (1946) ("the public policy of minimum wages,

---

9. At the time *O'Neil* was decided, liquidated damages were mandatory. 324 U.S. at 710. Since then, however, the statute has been amended to make liquidated damages discretionary. 29 U.S.C. § 216(b). That change, however, does not affect *O'Neil's* analysis or ours.

promptly paid, [is] embodied in the Wage–Hour Act").

State officials seek to distinguish *O'Neil* on the footing that the delay there was a long time (years), whereas here it was only a couple of weeks. *O'Neil*, however, did not rest its holding on the length of the delay. In any event, long versus short strikes us as an unworkable standard.

The Eleventh Circuit echoed *O'Neil*'s holding in *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985). Olson was a used car salesman who received weekly cash bonuses for each sale, and a sum at the end of the month also based on sales. Over five months, Olson received less than the minimum wage in three months, and more than the minimum in two. Since these two months were highly profitable, Olson's total for the five months was more than the minimum wage. Nevertheless, he argued that he deserved the difference between the minimum wage and what he received for the three months in which he was under the minimum wage.

The court adopted the government's Wage and Hour Field Operations Handbook rule, which stated that the FLSA requires "that the employee receive 'prompt payment' of the minimum wage covering all hours worked during the pay period." *Id.* at 1578. As the court wrote, "[w]e think the Act clearly requires an employee to be *paid* the minimum wage for each hour worked during the pay period." *Id.* (emphasis original). "[E]xcess commissions earned by salesmen during one pay period may be carried forward and applied to the minimum wage for the next period *so long as the employee actually received the minimum wage for each hour worked within each separate pay period.*" *Id.* at 1579 (emphasis supplied). Consequently,

> [t]his places a duty on the employer to ensure that the employee *receives* payment of the minimum wage. A mere alteration of the employer's records that reflects ex-

cess commissions earned in the preceding period being applied toward the minimum wage for the current period will not suffice. The employee must *actually receive* the minimum wage each pay period.

*Id.* (emphasis original).[10]

Several other courts have also indicated that employees must be paid on payday under the FLSA. For example, in *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir.1961), the court stated that "[w]hile the FLSA does not expressly set forth a requirement of prompt payment, such a requirement is clearly established by the authorities." Similarly, in *Donovan v. Kaszycki & Sons Contractors, Inc.*, 599 F.Supp. 860, 869 (S.D.N.Y.1984) the court wrote that "the fact that defendants may have intended to pay the employees at some future date, or that some employees might have acquiesced, albeit grudgingly, to deferred payment, has no bearing on the fact that the statute was violated." *See also Birbalas v. Cuneo Printing Industries, Inc.*, 140 F.2d 826, 828 (7th Cir.1944) (past due payment for overtime wages did not foreclose a suit for liquidated damages); *Rigopoulos v. Kervan*, 140 F.2d 506, 507 (2d Cir.1943) (overtime compensation "shall be paid in the course of employment and not accumulated beyond regular payday."); *Seneca Coal & Coke v. Lofton*, 136 F.2d 359, 363 (10th Cir.), *cert. denied*, 320 U.S. 772, 64 S.Ct. 77, 88 L.Ed. 462 (1943) (FLSA violated if overtime payments not made "when due in the regular course of employment"); *accord Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1299 (3d Cir.1991) ("liquidated damages ... compensate employees for the losses they may have suffered by reason of not receiving their proper wages *at the time they were due*," emphasis supplied); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944), *cert. denied*, 324 U.S. 883, 65 S.Ct. 1021, 89 L.Ed. 1433 (1945), (obligation to pay liquidated damages "immediately arises" when "an employer on any regular payment date fails to pay the full amount" due).

---

10. *Olson* was modified on rehearing, but this language remained intact. In its modification to the opinion, the court reaffirmed the "prompt payment" ruling, noting that the "employer has

yet to furnish ... any law or regulation which would permit an employer to pay an employee less than the minimum wage during a pay period." *Olson*, 776 F.2d at 267.

We are therefore satisfied that our conclusion, that payment of minimum wages is late if not done on payday, is in line with the view of other courts.

**C**

The Department of Labor's opinion of the statute further buttresses our holding. When faced with a problem of statutory construction, federal courts should show "great deference to the interpretation given the statute by the officers or agency charged with its enforcement." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

As Opinion Letter, No. 63 (Nov. 30, 1961) reflects, an employer sought to pay an employee less than the minimum wage during the week, and make up the difference at the end of the month. The Department opined that this violated the FLSA. "[W]hile the Act does not require that the employee's compensation must be paid weekly, it does require the employer to pay minimum wages due for the particular work week on the regular payday for the period such work week ends." *See also* Opinion Letter, No. 1296 (Nov. 27, 1973) (employee must receive minimum wage at each paycheck); W.H. Admin.Op. (Jan. 27, 1969) ("The Act requires that employees must be paid on the regular payday.").

Our construction is also consistent with applicable federal regulations. 29 C.F.R. § 531.27(a) requires that "payments of the prescribed wages, including overtime compensation, [be made] in cash or negotiable instrument payable at par." 29 C.F.R. § 778.106 requires that overtime compensation be paid on the employee's regular payday. If overtime wages must be paid in cash or negotiable instruments on the employee's regular payday, then certainly the minimum wage must also be paid on the employee's regular payday. *See Klinghoffer,* 285 F.2d at 491.

**III**

■ State officials argue that the district court's finding that the FLSA contains a requirement that employees be paid promptly upon the end of their pay period, coupled with the order directing that the State of California must comply with such an implied requirement, is in derogation of the state's constitutional and statutory budget provisions. As the district court granted no injunctive relief, we do not understand that the state has been ordered to comply with any requirement of the FLSA. Like any other employer, however, if it does not do so the state is exposed to liability for "unpaid minimum wages," liquidated damages or prejudgment interest. To the extent state officials contend that this exposure to damages infringes on the state's sovereignty under the Tenth Amendment, we disagree.

In *Garcia v. San Antonio Metro. Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) the Supreme Court held that states are subject to the FLSA, overruling *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). And we have recently held that "Congress has made unmistakably clear its intention to apply the FLSA to the states." *Hale v. Arizona,* 993 F.2d 1387, 1391 (9th Cir.1993) (en banc).

State officials argue that *Garcia* is distinguishable on its facts because applying the FLSA in that case only forced the state agency to pay its employees a minimum wage as other employers are required to do, but to apply it here would require California to pass a budget on time, a much more serious infringement of state sovereignty. Assuming state officials are correct that in the absence of a budget, the state was not legally able to pay its employees, we nevertheless find that the application of the FLSA is not preempted by the Tenth Amendment. To the extent compliance with the FLSA interferes with the state budgetary process, that interference is caused by state law, not federal law. The FLSA does not require California to pass a budget on time; it only requires California to do what all employers must do—pay its employees the minimum wage on payday. That California has made its federal obligation dependent upon the operation of state law does not render the federal law unconstitutional.

State officials also argue that *Gregory v. Ashcroft,* —— U.S. ——, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) and *New York v. United States,* —— U.S. ——, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) prohibit application of the FLSA to California. *Gregory* applied an axiom of legislative interpretation called the plain statement rule: if a Congressional statute intends to preempt the historic powers of the States, its intention must be unmistakably clear in the language of the statute. —— U.S. at ——, 111 S.Ct. at 2401 (quoting *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 65, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989)). *Gregory's* plain statement rule is satisfied here since the FLSA clearly applies to state employees such as Biggs. *Hale,* 993 F.2d at 1391; 29 U.S.C. §§ 203(d)-(e).

*New York* held that the federal government cannot force the State of New York to regulate nuclear waste in a certain way because in doing so, Congress exceeded its Article I powers. —— U.S. at ——, 112 S.Ct. at 2428–29. Here, there is no dispute that the FLSA was an appropriate exercise of federal power.

## IV

We therefore hold that state officials' failure to issue the class's paychecks promptly when due violates the FLSA. Paychecks are due on payday. After that, the minimum wage is "unpaid."

**AFFIRMED.**

TROTT, Circuit Judge, dissenting and concurring:

As I write this opinion, major cities and towns in four Midwestern states are under water. From Montevideo, Minnesota through Minneapolis and St. Paul, from Dubuque, Des Moines, and Davenport, Iowa through Hannibal and St. Louis, Missouri, the waters of the Mississippi River and its tributaries have disrupted the lives of almost everyone living and working in the area. According to the Associated Press, 250,000 people in Des Moines are without drinking water, and 30,000 people have been flooded out of their homes in Iowa, Illinois, and Missouri. Businesses everywhere are closed. The interruption to everyday life caused by this natural disaster is similar in many respects to recent hurricanes in Florida, earthquakes in California, and drought in South Carolina: virtually everything stops except heroic efforts to survive and recover. I use this to illustrate the fact that unpredictable forces beyond anyone's control frequently invade our lives and disrupt the orderly course of everything, including the normal operation of business and commerce. These forces do not respect the calendar, payday, or the Fair Labor Standards Act. On a lesser scale, people get sick, customers declare bankruptcy, computers crash, the mail is sometimes late, and yes, states required to live by rules designed to ensure fiscal responsibility prohibit by law the release of paychecks until a budget is passed. Even federal employees are not always paid on payday. Meeting a payroll on time is not always easy or possible.

The real world notwithstanding, we now impose from the cocoon of a federal appeals court a new peril on people struggling to provide jobs for others: pay your employees before the clock strikes midnight, or you just bought yourself a lawsuit in federal court. Floods and the like provide the rock, we now provide the hard place.

Congress has not spoken on this precise issue. All the law says is that employers shall pay their employees the minimum wage, period. Congress has not uttered a word about *when* this payment must be made. Yet, driven by a search for a "bright line," we read into the law an impractical requirement that creates a cause of action against an employer at midnight plus one second after the expiration of payday. The majority's holding says to employers, we don't care why you were late, we don't care what your reason was, the only issue now is whether liquidated damages shall be awarded. Judge Rymer says this rule does not unfairly penalize employers "who happen to be late in paying their employees." I thoroughly disagree. So will many employers. I do not dispute the idea that payment must be made in a reasonable time given the circumstances, but I do disagree with the notion

that payment must be made on payday, no excuses accepted. Surely most employees of flood-ravaged employers would not take them to court to take advantage of their instant cause of action. Why? Because they too would recognize the unfairness of requiring someone to pay on time when they reasonably cannot. But it makes no sense to leave all employees at the mercy of the good will of their employers. The instant case demonstrates what can happen. Labor unrest is not uncommon.

In this respect, I believe the district court fashioned a workable rule for determining when a violation of the FLSA occurs, a rule I would adopt for this Circuit:

> The requirement of prompt payment should not be construed to impose strict liability on an employer for every delay in payment, however slight or for whatever reason. Indeed, such a result would threaten to bring about the financial ruin of many employers, seriously impair the capital resources of many others, provide a windfall to employees, and burden the court with excessive and needless litigation, all in direct contravention to the expressed intent of Congress. See 29 U.S.C. § 251(a)(1), (4) and (7). Instead, it must be interpreted to require payment which is reasonably prompt under the totality of the circumstances in the individual case. This interpretation is consistent with the long-established customs, practices, and contracts between employees and employers which Congress sought to revive in enacting the amendment to the statute. See *Id.* at § 251(a). For it has long been recognized that in the absence of a provision indicating that time is of the essence, a party is entitled reasonable time to perform. John D. Calamari & Joseph M. Perillo, *Contracts* § 11–22 at 410. (2nd ed. 1977).

Judge Rymer relies on "logic," but logic used in this sense means judgment, and judgment means reason and choice. I respectfully believe she has made the wrong choice. We don't need bright lines for everything. Sometimes they work mischief. It is ironic that we impose this bright line on employers at a time when most federal judges are publicly railing against the rigidity of federal sentencing guidelines. There is a place for bright lines, but this is not it. This is essentially a *policy* choice. Because Congress has left it to us, I would choose a more comprehensive approach that recognizes the problems of the real world.

Those of us who live surrounded by lawsuits may not be scared of them, but well-meaning and conscientious employers—including sovereign states and their political subdivisions—are not so sanguine about mandatory costs and attorneys' fees, See 29 U.S.C. § 216(b), and the hassle of being hauled into court. For everyone, being a defendant in federal court is a disaster of its own kind. To the detriment of all of us, the litigation explosion continues.

The parade of litigation horribles conjured up by the majority to discredit reasonable flexibility is simply false. Trial courts and judges are well equipped to deal with yielding rules. We do it all the time. For example, the statute of limitations clock does not start to tick against an injured employee eligible for a disability award under the Longshoremen's and Harbor Workers Compensation Act, 33 U.S.C. § 901 et seq., until the employee becomes "aware of the full character, extent and impact of the harm done to him." *Todd Shipyards v. Allan,* 666 F.2d 399, 401 (9th Cir.) (emphasis omitted), *cert. denied,* 459 U.S. 1034, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982). No bright line here. This is just a matter of fairness and common sense. *See also Abel v. Director, OWCP,* 932 F.2d 819 (9th Cir.1991). Ironically, one of the cases cited by the majority cuts against its reasoning. In *Aronsen v. Crown Zellerbach,* 662 F.2d 584 (9th Cir.1981), we rejected the use of a bright-line statute of limitations formula in favor of a test based on when an employee "knows or should know that an unlawful employment practice has been committed." *Id.* at 593. We said, "Judicial review in each case cannot be facilitated by bright-line approaches because, as the court has indicated, such formulae tend to obscure and even distort congressional intent." *Id.* The only congressional intent I can readily discern from the FLSA is the intent to insure the payment of minimum wages, not

that payment be made on payday come hell or high water, or else. I quote the Supreme Court:

The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required Federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce.

*Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 706–07, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945) (footnotes omitted).

I disagree with the majority that the district court's test would require us to "guess" when late payment becomes nonpayment and when the statute of limitations starts to run. Trial courts would no more "guess" at this than anything else they decide. I have no doubt that we easily could apply the district court's test in FLSA cases without damaging the purpose of Congress in enacting this law.

The majority's holding also undercuts 29 U.S.C. § 260, which allows an employer to escape the clutches of liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith *and* that *he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]. Id.* (emphasis added). If payment must be made on payday, period, no excuses allowed, how could a flooded-out employer ever show he had reasonable grounds to *believe* his failure to pay on payday "was not a violation" of the Act? The majority's failure to appreciate the ramifications of its bright-line rule on this issue and likewise to provide guidance to district courts is lamentable.

So, to employers in the Ninth Circuit, beware. No matter what your excuse, good or not, the next earthquake, fire, drought, death or illness, bankruptcy, flood, computer failure, or fiscal crisis may land you without a defense in federal court, especially if you are not on friendly terms with your employees.

Nevertheless, I concur in the outcome in this case because California understandably passed up its opportunity to demonstrate to the district court that its delay in payment was reasonable, preferring instead to argue that the statute only prohibits nonpayment, not late payment. I characterize California's litigation position as "understandable" because it is true that the statute we construe says absolutely nothing about the timing of payments. Thus, although I disagree with the majority's draconian rule, I concur in the result of this appeal.