John F. ROGERS, et al., Plaintiffs,

v.

The CITY OF TROY NEW YORK; David M. Grandeau, in his official capacity as City Manager of the City of Troy, New York, Defendants.

No. 94–CV–1652.

United States District Court, N.D. New York.

Dec. 19, 1996.

Gleason, Dunn Law Firm, Albany, NY, for plaintiffs; Mark T. Walsh, of counsel.

Corporation Counsel City of Troy, Troy, NY, for defendants; Peter R. Kehoe, of counsel.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND AND FACTS

This case is brought by ninety-five (95) Troy, New York police officers pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* The plaintiffs seek "injunctive and declaratory relief and to recover unpaid minimum wages that allegedly are owed to the plaintiffs by defendants as well as liquidated damages plus reasonable attorneys' fees, costs and expenses." Complaint at ¶ 1.

The crux of the dispute is the institution of a "lag" period with respect to the day on which the officers received their paychecks from the City. In essence, as a cost saving measure, the City phased-in, over an eight week period, a bi-weekly payroll system rather than the then weekly payroll system. The result to the plaintiffs was that rather than be paid on the last day of their respective pay period, the officers, after a series of one day push backs of the actual date pay was received, were now to receive their pay on the Friday following the last day of the pay period. The affected employees were notified of the proposed change on or about September 23, 1994. The process of changing the payment date began on October 7, 1994, and the bi-weekly payment practice was fully established by December 2, 1994.[1]

It is the plaintiffs' position that the institution of a bi-weekly payroll system violates the Fair Labor Standards Act. More specifically, the plaintiffs argue, in support of a motion for partial summary judgment, that by the implementation of a one week lag, the defendants made five late/delayed payments and failed to pay the plaintiffs for one week worked in the year 1994.[2] They argue that the lag period violates the Fair Labor Standards Act, because a delayed payment is identical to no payment. In addition, the plaintiffs argue that the City is collaterally estopped, by virtue of the state court judgment, from relitigating the issue of what day is the proper payday. Finally, the plaintiffs argue that certain public policy reasons mandate the finding in this case that a weekly pay period is proper. The plaintiffs seek liquidated damages equal to their weekly pay for each of the five weeks that the City allegedly violated the Fair Labor Standards Act.

The defendants argue that the plaintiffs have not pleaded in their Complaint the claim argued on summary judgment. More particularly, the defendants claim that the Complaint sets forth a claim for a single withholding of one week's pay. However, the defendants claim that the plaintiffs assert a wholly new and different claim for relief in the motion for partial summary judgment. Thus, the defendants argue that the plaintiffs are precluded from recovery on this motion.

---

1. The plaintiff only claim a violation of the Fair Labor Standards Act for a five week period.

2. The plaintiffs, by their union, commenced a state court grievance/arbitration action for breach of the collective bargaining agreement, which resulted, in part, in a judgment awarding the one week withheld amount.

Without citing a single authority, the defendants claim that collateral estoppel does not apply. Finally, the defendants argue that the Fair Labor Standards Act does not prohibit an employer from changing the date on which an employee is paid. Thus, they conclude that the City did not violate the Act when it changed the date on which the plaintiff police officers were paid.

## II. DISCUSSION

The first issue for the Court to determine is if the claim at issue in this motion was pleaded in the Complaint. If so, the Court will examine the next threshold issue, collateral estoppel. If necessary, the Court will then turn to considering the issues specifically relating to the Fair Labor Standards Act ("FLSA").

### A. Sufficiency of Complaint in Relation to the Present Motion

■ The defendants argue that the "claim" asserted in this motion is not a claim alleged in the plaintiffs' Complaint, and thus, the Court cannot entertain the motion, much less grant the relief sought. More specifically, the defendants argue that the Complaint states that the defendants violated the FLSA by withholding *one* week's pay from them, and thereby depriving the plaintiffs of minimum wages for that week. However, in the instant motion, the plaintiffs seem to argue that they are entitled to liquidated damages as provided in the FLSA for *five* weeks in which they were paid late. For that reason, the defendants argue that the plaintiffs have failed to plead the claim raised in the instant motion, and that the claim pleaded in the Complaint has been abandoned. For the following reasons, the Court disagrees with the defendants.

"[F]ederal pleading is by statement of claim, not by legal theory." *Newman v. Silver*, 713 F.2d 14, 15 n. 1 (2d Cir.1983); Fed.R.Civ.P. 8(a); *see also Gins v. Mauser Plumbing Supply Co.*, 148 F.2d 974, 976 (2d Cir.1945) (Clark, J.) ("particular legal theories of counsel yield to the court's duty to grant the relief to which the prevailing party is entitled, whether demanded or not"). The plaintiffs have pleaded a claim for a violation of the FLSA, 29 U.S.C. § 201 *et seq*. The fact that the Complaint states one week and the motion states five weeks for the time frame of the alleged violation is irrelevant to the claim, as it does not change the issue raised, to wit, whether the City violated the FLSA when it unilaterally changed to a bi-weekly payment system. This seeming discrepancy in the claims as pleaded and argued relates solely to the amount of damages potentially available to the plaintiffs if they prevail.

Fed.R.Civ.P. 54(c) provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Pursuant to the Federal Rules, the "one week"/ "five weeks" discrepancy is irrelevant to the issue of whether the issue pleaded in the Complaint and that argued in the instant motion are dissimilar. Accordingly, the defendants claim that the plaintiffs abandoned the claim asserted in the Complaint by raising a different claim in the instant motion is of no moment.

### B. Standard for a Summary Judgment Motion

The standard for granting a motion for summary judgment is well-settled. Summary judgment is appropriate when no genuine issues of material fact exist, and thus the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant bears the initial burden of showing the Court that, on the evidence before it, there is no genuine issue of material fact. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmovant must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.Proc. 56(e). There must be more than a "metaphysical doubt as to the material facts." *Delaware & Hudson Rwy. Co. v. Conrail Corp.*, 902 F.2d 174, 178 (2d Cir.1990), *quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "In considering a motion for summary judgment, the district court may rely on 'any material that would

be admissible or usable at trial.'" *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 516 (2d Cir.1994), *quoting* 10A C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2721 at 40 (2d ed. 1983). However, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Azrielli,* 21 F.3d at 517. Any assessments of credibility and all choices between available inferences are matters to be left for a jury, not matters to be decided by the Court on summary judgment. *Id.; See, e.g.,* Fed.R.Civ.P. 56(e), 1963 Advisory Committee Note. "Only when reasonable minds could not differ as to the import of the evidence is summary judgement proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991), *cert. denied* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). It is with the foregoing standards in mind that the Court turns to the issues presented.

## C. Collateral Estoppel

■ It is the plaintiffs' position that the defendants must be precluded from relitigating the propriety of the City's change of the pay period, as that issue was already decided by the state courts. The defendants, without elaboration, state that this case raises a completely different claim from that raised in the state court, and thus, collateral estoppel does not preclude litigation of any issue. The Court agrees with the defendants conclusion for the reasons set forth below.

■ The full faith and credit clause of the United States Constitution compels federal courts to give the same preclusive effect to a state court judgment as would be given in the state in which it was rendered. *Migra v. Warren City School Dist. Bd. of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *see,* 28 U.S.C. § 1738. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). The leading New York Court of Appeals

opinion states that "collateral estoppel ... precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 501, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487, 490 (1984) (citations omitted). "[T]he issue must have been material to the first action or proceeding and essential to the determination therein, (citations omitted), and it must be the point actually to be determined in the second action or proceeding such that 'a different judgment in the second would destroy or impair rights or interests established by the first.'" *Ryan,* 62 N.Y.2d at 502, 478 N.Y.S.2d at 826, 467 N.E.2d at 490, *quoting Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp.,* 250 N.Y. 304, 307, 165 N.E. 456 [Cardozo, Ch. J.]. Thus, an issue that either was not vital to the determination made in a prior proceeding, or is inconsequential to the present action will not properly be precluded in the latter by application of the collateral estoppel doctrine.

In this case it is the plaintiffs who seeks to assert the doctrine. If found to apply, the defendants may defeat the application of collateral estoppel if they can show that they did not have a "full and fair opportunity ... to contest the decision now said to be controlling ..." *Id.*

### 1. Issue(s) Necessarily Decided By the State Court

■ The plaintiff has the initial burden of showing that the issues decided in the prior proceeding were the same as those presented in the present action, that the resolution of those issues was necessary for the resolution of the prior proceeding, and that the issues are material to the present action. *See Ryan,* 62 N.Y.2d at 502, 478 N.Y.S.2d at 827, 467 N.E.2d at 491. Accordingly, the Court must first determine what was decided by the state court, and then examine the contentions of the plaintiff, in this case.

Following the City's change to a biweekly pay system, the Troy Police Benevolent and Protective Association, Inc. ("PBA"). com-

menced a "grievance/arbitration" proceeding pursuant to the collective bargaining agreement. The arbitrator found that the implementation of a lag payroll system was an item governed by the collective bargaining agreement. *See* Rogers Aff., Exhibit K at 11. As such, and on the basis of considerable precedential weight, it was concluded that the weekly system could not be changed unilaterally. *Id.* Rather, a change "must be the result of negotiation and mutual agreement of the parties." *Id.* at 12. The arbitrator, *inter alia,* ordered the City to reinstate the weekly pay system, on the basis that the implementation of the one week lag violated the collective bargaining agreement. *Id.* at 20. In essence, the arbitrator held that the City had breached its contract with the plaintiffs.

The PBA then commenced a proceeding in New York State Supreme Court, pursuant to CPLR Article 75, to confirm the arbitration award. The City asserted an affirmative defense seeking to vacate the award. By a Decision and Judgment of the Supreme Court, Rennselaer County, filed on September 11, 1995, the award was confirmed. *See* Walsh Aff., Exhibit B at 3. The City then appealed. The Appellate Division, by Memorandum and Order dated January 25, 1996, affirmed the lower court, and stated that the City's appeal was frivolous. *See* Walsh Aff., Exhibit C at 2. Therefore, the state courts have decided that the City violated the collective bargaining agreement when it changed from a weekly to bi-weekly pay schedule. It was that sole issue that was before the state courts, and it is that sole issue that will be precluded: (1) if it is an issue necessary for the determination of the FLSA claim raised in the instant action, such that a different judgment in this case would destroy or impair rights or interests established by the state courts, and, if so, (2) if the defendants had a full and fair opportunity to litigate the issue before the state courts.

**2. Necessity of Decided Issue in the Instant Case**

As the Court has already determined that the sole issue decided by the state courts is that the City breached its collective bargaining agreement with the PBA, the Court must next determine if that issue necessarily must be decided in the present action. If not, the doctrine of collateral estoppel is inapplicable. If so, the Court will then examine whether the defendants had a full and fair opportunity to litigate the issue in state court. *See Ryan,* 62 N.Y.2d at 502, 478 N.Y.S.2d at 827, 467 N.E.2d at 491.

The claim asserted in the Complaint is pursuant to the FLSA. The FLSA requires that an employer pay each employee no less than a statutorily prescribed minimum wage. *See* 29 U.S.C. § 206. Section 206(b) mandates that "every employer shall pay" employees the minimum wage if "in any workweek [the employee] is engaged in commerce." There is no dispute that the plaintiffs fall within the scope of the Act.

Although not specifically addressed in the statute, there is general acceptance of the proposition that payment must be prompt or "on time." *See Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707 n. 20, 65 S.Ct. 895, 902 n. 20, 89 L.Ed. 1296 (1945); *Biggs v. Wilson,* 1 F.3d 1537, 1539–40 (9th Cir.1993), *cert. denied* 510 U.S. 1081, 114 S.Ct. 902, 127 L.Ed.2d 94 (1994). Courts have construed the term prompt to mean the regular payday. *See Brooklyn Sav.,* 324 U.S. at 711, 65 S.Ct. at 904; *Biggs,* 1 F.3d at 1541. Thus, the central issue relating to an alleged violation of the FLSA, 29 U.S.C. § 206(b), is whether a plaintiff was or was not paid at least a minimum wage on his/her regular payday, regardless of whether a failure to promptly pay was the result of delayed payment or no payment at all. Nowhere in the statute is there language to the effect that it must be shown that such failure to promptly pay was in violation of collective bargaining agreement, contract, or other arrangement. Such agreements, as suggested by the plaintiffs, may be evidence of what the regular pay period was, in relation to the parties to the dispute. However, the fact that an agreement has terms that sets forth a pay period does not bear on the ability of the employer, *under the FLSA,* to change that pay period. In other words, where the alleged breach of the collective bargaining agreement bears on rights that do not arise from the FLSA the

arbitral decision is not a bar to a federal claim, and thus, is not dispositive. *See Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 745, 101 S.Ct. 1437, 1447, 67 L.Ed.2d 641 (1981). Accordingly, and as will be further explained below, there is no identity of issues between the state action, essentially a breach of contract action, and the instant action, brought under the FLSA.

### 3. Full and Fair Opportunity To Litigate

Given the court's determination that there is no identity of issues, it need not reach the issue of whether the defendants had a full and fair opportunity to litigate whether the instigation of a lag pay period was a breach of the collective bargaining agreement as that issue is not material to the FLSA claim, and thus, will be given no preclusive effect.

### D. Alleged Violation of the FLSA

### 1. FLSA and a Change in the Payday

█ As set forth above, the failure of an employer to pay at least a minimum wage to an employee on the regular payday gives rise to a claim pursuant to the FLSA. *See* 29 U.S.C. § 206(b); *see also Brooklyn Sav., supra* at 711, 65 S.Ct. at 904; *Biggs, supra* at 1541. The issue for the Court to determine is whether the defendants have violated the FLSA by unilaterally changing the payday, i.e., phasing-in a biweekly rather than weekly pay system. The Court actually is faced with two issues; one legal, the other factual. First, the Court must make the legal determination of if and under what circumstances an employer can change the date on which it pays its employees. Then, the Court must make the factual determination as to whether the defendants' alleged violation of the FLSA by implementing a biweekly payment system raises a material question of fact.

█ The Court first notes that the administrative regulations adopted pursuant to FLSA "are entitled to great weight and should not lightly be set aside." *Mitchell v. Greinetz,* 235 F.2d 621, 625 (10th Cir.1956).

FLSA regulations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944); *see Hill v. United States,* 751 F.2d 810, 813 (6th Cir.1984), *cert. denied Cummings v. United States,* 474 U.S. 817, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985).

As to whether an employer can change the designated payday, the parties agree that the FLSA does not directly address the issue. Certainly, the regulations to the Act recognize that employees will not be paid uniformly. Rather employees will be paid "on a daily, weekly, biweekly, monthly, or other basis." 29 C.F.R. § 778.104 (stated in context of defining a single workweek as the computational standard under the Act). However, the regulations to the FLSA suggest that the ability of an employer to change the pay period is contemplated by the Act. *See* 29 C.F.R. §§ 553.224 & 778.105. 29 C.F.R. § 553.224 applies to employees of state and local governments, including law enforcement personnel, in the context of exemptions to the overtime provisions of the FLSA. That section states "[t]he beginning and the ending of the work period may be changed, provided that the change is intended to be permanent and is not designed to evade" certain requirements of the Act. In section 778.105, a provision of "Subpart B—the Overtime Requirements," the regulations state "[t]he beginning of the workweek may be changed if the change is intended to be permanent and it is not designed to evade" certain requirements of the Act. Each section concerns the effect of a change in the pay period on the FLSA's overtime requirements or the exemptions therefrom. However, each section clearly states that a change in the pay period is permissible under the Act if two requirements are met. First, the change must be intended to be permanent. Second, the change must not be for purposes of evading the requirements of the Act.[3] Without reaching the issue of whether the defendants satisfied these requirements, the Court holds that the FLSA, as a general

---

**3.** In the instances of 29 C.F.R. § 553.224 and 29 C.F.R. § 778.105, those requirements relate to overtime pay.

rule, does not prohibit an employer from changing a payday in all circumstances. The issue the Court must next turn to is the effect of collective bargaining agreement on the FLSA.

### 2. FLSA and the Collective Bargaining Agreement[4]

■ The plaintiffs argue that the fact that the defendants violated the collective bargaining agreement by unilaterally instituting a biweekly pay system, in effect, renders all payments made pursuant to the "lag" process and biweekly system delayed payments, such that the defendants were in violation of the FLSA.

The Court first notes the FLSA's purpose was to protect employees from detrimental labor conditions and provide for the general well-being of workers. *See Lyon v. Whisman*, 45 F.3d 758, 763 (3d Cir.1995), *citing* 29 U.S.C. § 202. The FLSA is clearly structured to provide workers with specific minimum protections against excessive work hours and substandard wages. *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981). As noted by the Supreme Court in *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942):

> "A fair day's pay for a fair day's work" was the objective stated in the Presidential message which initiated the legislation. That message referred to a "general maximum working week", "longer hours on the payment of time and a half for overtime" and the evil of "overwork" as well as "underpay."

*Id.* at 578, 62 S.Ct. at 1220, *quoting* 81 Cong. Rec. 4983, 75th Cong., 1st Sess. (1937). "The substantive sections of the FLSA, narrowly focusing on minimum wage rates and maximum working hours, bear out its limited purposes." *Lyon*, 45 F.3d at 764. Collective bargaining agreements, on the other hand, were encouraged by the passage of the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.*, "which was designed to minimize industrial strife and improve working conditions by encouraging employees to promote their interests *collectively.*" *Barren-*

*tine*, 450 U.S. at 739, 101 S.Ct. at 1444 (emphasis in original).

It was in recognition of these distinct congressional purposes that the Supreme Court has held "that FLSA rights cannot be abridged by contract or otherwise waived." *Id.* at 740, 101 S.Ct. at 1445, *citing Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945) (additional citations omitted). In addition, the Supreme Court has held "that congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement." *Id.* at 740–741, 101 S.Ct. at 1445, *citing Martino v. Michigan Window Cleaning Co.*, 327 U.S. 173, 177–178, 66 S.Ct. 379, 381, 90 L.Ed. 603 (1946) (additional citations omitted). In *Barrentine*, the Court held that prior arbitral determination of rights created under the FLSA does not bar a subsequent action in a federal court pursuant to the FLSA. 450 U.S. at 745, 101 S.Ct. at 1447. None of these aforementioned holdings bears directly on the issue raised in this case. However, they are instructive in that they illustrate the primacy of FLSA rights in relation to rights negotiated in a collective bargaining agreement.

In this case, the plaintiffs would have the Court find a violation of the FLSA because the defendants have been found in an arbitral forum to have violated the collective bargaining agreement with the plaintiffs when it implemented a biweekly pay system. As stated in *Barrentine*, "courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, [however] different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." 450 U.S. at 737, 101 S.Ct. at 1443. This general rule was iterated by the Third Circuit in *Vadino v. A. Valey Engineers*, when it stated that "[t]he Supreme Court has consistently recognized . . . the distinction between claims asserting a statutory right and those to enforce the terms of a collective

---

**4.** The Court notes that there is no decision in this        Circuit directly on point.

bargaining agreement." 903 F.2d 253, 265 (3d Cir.1990).

The right asserted by the plaintiffs herein is the right to being paid promptly at least a minimum wage. That general right to prompt payment is a right protected under the FLSA. *See* 29 U.S.C. § 206(b); *see also Brooklyn Sav., supra* at 711, 65 S.Ct. at 904; *Biggs, supra* at 1541. Pursuant to the collective bargaining agreement between the defendants and the PBA, the plaintiffs' pay period was weekly. This is a right created under the collective bargaining agreement. Certainly, such a provision is some evidence of when payment should be made such that it is prompt and lawful under the Act. The plaintiffs would have this Court hold such a term dispositive of the issue of whether payment was prompt. In support of its attempt to have the Court hold as dispositive the decision of the state arbitrator as to the weekly payday, the plaintiffs quote a footnote in *Barrentine* that states, in part, "a court should defer to a prior arbitral decision construing the relevant provisions of the collective-bargaining agreement." *Id.* at 741 n. 19, 101 S.Ct. at 1445 n. 19.[5] However, the plaintiffs have failed to set forth the entire sentence from which the quote is taken. When looked at in its entirety, the footnote clearly leads to a result directly contrary to that sought by the plaintiffs. In footnote nineteen, the *Barrentine* Court states

> Where plaintiff's claim depends upon application of one of these exceptions, we assume without deciding that a court should defer to a prior arbitral decision construing the relevant provisions of the collective-bargaining agreement. In this case, however, petitioners' threshold claim does not depend upon application of any of those exceptions.

*Id.* The exceptions referred to are specific provisions of the FLSA that expressly refer to collective bargaining agreements.[6] Thus, in the absence of a claim relating to a specific exclusion under the Act, the Supreme Court instructs that a Court need not defer to an arbitral decision.

In this case, the Court considers deference to the arbitral decision to be inappropriate. The FLSA requires that employees be paid on their regular payday. *See* 29 U.S.C. § 206(b); *see also Brooklyn Sav., supra* at 711, 65 S.Ct. at 904; *Biggs, supra* at 1541. The Act does not prohibit a change of payday, i.e., weekly to biweekly, as long as the change is intended to be permanent and is not designed to evade the requirements of the Act—no less that a minimum hourly wage, time and one-half for overtime, maximum hours, etc.... *See, e.g.,* 29 C.F.R. § 553.224.

The facts before this Court are undisputed. The change effectuate by the defendants was intended to be permanent, and did not result in an evasion of the Act. In addition, it is undisputed that the plaintiffs were paid on the days designated under the "lag" system. In other words, the plaintiffs were paid on the designated paydays, i.e., promptly paid the wages earned. The fact that the change was a breach of the collective bargaining agreement does not mean that it was a violation of the FLSA. The right to be paid weekly is a right that was bargained for. It is a right created by the collective bargaining agreement. It is not a right created by Congress in the FLSA.

To find a violation of the FLSA, in this case, from a breach of the collective bargaining agreement would expand the scope of the FLSA beyond that indicated by the legislative purpose of the Act. *See Barrentine,* 450 U.S. at 738–40, 101 S.Ct. at 1443–45. Moreover, such a result would permit employees, through the collective bargaining process, to create a federal right to payment pursuant to a particular system—in this case a weekly pay system. This Court, absent clear authority to the contrary, declines to read the

---

5. This is the identical quote included in a Third Circuit decision, cited by the plaintiffs, in support of their motion. *See Vadino,* 903 F.2d at 266.

6. *See* 29 U.S.C. §§ 207(b)(1) and (2) (relating to an exclusion to the overtime provisions of the Act); 29 U.S.C. § 203(*o* ) (relating to exclusions of time from the general definition of "hours worked"); and 29 U.S.C. § 254(a)(2) (relating to exclusions from compensable time).

FLSA so broadly.[7] A violation of a term created in the collective bargaining agreement, e.g., payment on a weekly basis, is remedied by resort to state law. An action for a violation of the FLSA is limited to redress of violations of rights created in the Act, e.g., failure to make payment on a regular payday. The plaintiffs seek to maintain a FLSA claim on the basis of a violation of a contractually created right. Pursuant to this Court's reading of *Barrentine,* the Court holds that the plaintiffs have failed to state a FLSA claim. Accordingly, the plaintiffs' Complaint should be dismissed in its entirety as to all defendants.

### III. CONCLUSION

For the reasons stated above, the Court hereby denies the plaintiffs' motion for partial summary judgment, and further, dismisses the plaintiffs' Complaint in its entirety for failure to state a claim upon which relief can be granted.

**IT IS SO ORDERED.**

---

**7.** The Court recognizes that the Third Circuit in *Vadino* seems to suggest that where a bargained for right is related to a right protected under the FLSA, "the FLSA [] claim would be dependent upon the resolution of the [state] contract interpretation issue." 903 F.2d at 266. It is arguable that under *Vadino*, a plaintiff would be permitted to enforce contractual rights pursuant to the FLSA. *Id.* However, in *Vadino*, the alleged breach of the collective bargaining agreement was brought before the Court pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. On that basis, *Vadino* is distinguishable from the instant case, in that the issue relating to breach in this case is not independently before the Court.