Filed 8/12/21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JAIME ZEPEDA LABOR CONTRACTING, INC., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF LABOR STANDARDS ENFORCEMENT, <br><br> Defendant and Appellant. | D078062 <br><br><br> (Super. Ct. No. PSC1705944) |

APPEAL from a judgment of the Superior Court of Riverside County, James T. Latting, Judge. Judgment affirmed; Cross-appeals dismissed.

Kay K. Otani for Defendant and Appellant.

Swajian Law, Gregory A. Swajian and Dawn M. Swajian for Plaintiff and Appellant Jaime Zepeda Labor Contracting, Inc.

Bruce D. Carroll for Plaintiffs and Appellants Anthony Vineyards, Inc. and Richard Bagdasarian, Inc.

Shepard Mullin, Richter & Hampton, Babak Yousefzadeh and Brian S. Fong for amicus curiae on behalf of Plaintiffs and Appellants.

I.

INTRODUCTION

California law requires that employers pay agricultural workers a minimum wage "on the established payday for the period involved." (Cal. Code. Regs., tit. 8, § 11140, subd. (4)(B).) Labor Code section 205[1] in turn requires farm labor contractors to establish weekly paydays for the payment of wages to their workers.

In addition to these minimum wage provisions, the Labor Code's final wage prompt payment provisions impose timing requirements on the payment of final wages to employees who are discharged (§ 201) or who quit (§ 202). If an employer "discharges" an employee within the meaning of the statute, "the wages earned and unpaid at the time of discharge are due and payable immediately." (§ 201, subd. (a).) In addition, generally speaking, if an employee quits without notice, her wages become due and payable 72 hours thereafter, unless she has given 72 hours previous notice of her intention to quit, in which case the wages are due at the time of quitting. (§ 202, subd. (a).) An employer that "willfully fails to pay," in accordance with sections 201 and 202, "any wages of an employee who is discharged or who quits" is subject to so-called waiting-time penalties of up to an amount equal to 30 days of wages. (§ 203, subd. (a).)[2]

California law also specifies how the minimum wage and final wage prompt payment provisions may be enforced. As relevant to this appeal,

---

1     Unless otherwise specified, all subsequent statutory references are to the Labor Code.

2     A section 203 penalty "is called a waiting time penalty because it is awarded for effectively making the employee wait for his or her final paycheck." (*Diaz v. Grill Concepts Services, Inc.* (2018) 23 Cal.App.5th 859, 867.)

2

section 1197.1, subdivision (b) authorizes the Division of Labor Standards Enforcement (the Division)[3] to issue a citation to the employer if the Division "determines that a person has paid or caused to be paid a wage less than the minimum under applicable law." While a section 1197.1 minimum wage citation may include "any applicable penalties imposed pursuant to Section 203 in connection with the citation," the existence of a minimum wage violation is a prerequisite to the issuance of such a citation.

In this appeal, we consider whether certain employers, farm labor contractor Jaime Zepeda Labor Contracting, Inc. (Zepeda), and Zepeda's "client employers" (§ 2810.3), Anthony Vineyards, Inc. (AVI) and Richard Bagdasarian, Inc. (RBI) (collectively "Employers"),[4] committed minimum wage violations that would support the Division's issuance of section 1197.1 citations. *It is undisputed that the Employers paid all of the employees at issue at least the minimum wage by payday.* Nevertheless, the Division contends that it properly issued section 1197.1 minimum wage citations because the Employers did not promptly pay the final wages of the employees

---

[3] To be precise, section 1197.1, subdivision (b) authorizes the "Labor Commissioner," to take such action. The Labor Commissioner is the Chief of the Division. (§ 21.) For ease of reference, we refer to the Labor Commissioner as the Division throughout this opinion.

[4] As a farm labor contractor, Zepeda hired employees who then performed work for various client employers at the client employers' worksite.

It is undisputed that Zepeda is the entity that paid the employees, and that, as Zepeda's client employers, AVI and RBI are subject to potential liability for wage violations pursuant to section 2810.3. Section 2810.3, subdivision (b) provides in relevant part, "A client employer shall share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for . . . the following: (1) The payment of wages." AVI and RBI do not raise any argument on appeal pertaining to the scope of their potential liability under section 2810.3.

3

who were purportedly discharged or deemed by the Division to have quit in accordance with the prompt payment mandates of sections 201, 202 and 203.[5]  The Division reasons that the failure to pay wages on the dates that the employees were discharged (§ 201, subd. (a)), or within 72 hours of when they quit (§ 202, subd. (a)), subjected the Employers to waiting time penalties under section 203, *and* constituted independent minimum wage violations that supported the issuance of section 1197.1 citations, even though the Employers paid final wages that were at or above the minimum wage on or before payday, in accordance with the minimum wage law.

After considering the text, structure, and purpose of the relevant laws, the lack of *any* authority supporting the conclusion that the Employers committed minimum wage violations under these circumstances, and a persuasive decision from another jurisdiction rejecting an argument nearly identical to the one that the Division advances here, we conclude that the Division improperly issued the section 1197.1 minimum wage citations to the Employers.  We therefore conclude that the superior court properly issued a peremptory writ of administrative mandate directing the Division to dismiss

---

[5]     The Division has maintained throughout this case that the employees for whom waiting time penalties were imposed were discharged within the meaning of section 201 "at the end of each grape-growing task . . . " and that employees who stopped coming to work shortly before the end of a grape-growing task "quit," within the meaning of section 202.  The Employers dispute each of these contentions.  We recognize that these are important issues for California's agricultural industry; we do not address them in this appeal because we conclude that the minimum wage issue is dispositive.

We *assume*, solely for purposes of this opinion, that the relevant employees in this case were discharged within the meaning of sections 201 or quit within the meaning of section 202.  We make these assumptions in order to address the primary and dispositive legal issue discussed in the text.  We emphasize that we *do not* conclude that the employees were in fact discharged or quit within the meaning of sections 201 and 202, and we express no opinion on this issue.

4

the section 1197.1 minimum wage citations with prejudice.[6]  Accordingly, we affirm the superior court's judgment granting a peremptory writ directing the Division to dismiss the citations with prejudice.[7]

---

[6]    In light of our affirmance of the judgment granting the peremptory writ on this ground, we need not consider the Division's contention that the superior court erred in concluding that there is a lack of substantial evidence to support the Division's imposition of wage penalties for certain employees whom the Division deemed to have quit (§ 202, subd. (a)).

[7]    The Employers have filed cross-appeals in which they claim that:  they did not "discharge[ ]," (§ 201, subd. (a)) any of the employees for whom the Division seeks to impose waiting time penalties (see fn. 5, *ante*); the superior court erred in determining that the Employers *willfully* failed to pay final wages on time; and the Division had no authority to issue a citation for waiting time penalties for wages paid prior to January 1, 2015, the effective date of an amendment to section 1197.1 permitting the Division to impose waiting time penalties in connection with a minimum wage citation.  (See Stats. 2014, ch. 886, § 1.)

A cross-appeal is proper when a party seeks affirmative relief by way of an appeal.  (See *Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 665.) However, a party who is not aggrieved by a judgment, may not properly file a cross-appeal.  (See *1041 20th Street, LLC v. Santa Monica Rent Control Bd.* (2019) 38 Cal.App.5th 27, 32, fn. 3 (*1041 20th St., LLC*).)  As the *1041 20th Street, LLC* court explained:

> " 'In a mandamus proceeding, just as in a civil action, "[a]ny party aggrieved may appeal" from the final judgment. [Citation.]  "One is considered, 'aggrieved' whose rights or interests are injuriously affected *by the judgment*." [Citation.]  Conversely, "[a] party who is not aggrieved by an order or judgment has no standing to attack it on appeal." ' [Citation.]  In its cross-appeal, 20th Street Owner seeks only to affirm the judgment below and argues alternative grounds to affirm.  Because 20th Street Owner does not seek additional relief, it is not aggrieved and we dismiss the cross-appeal." (*Ibid.*)

While the Employers request that this court reverse the superior court's "rulings" on the issues asserted in their cross-appeal, the Employers

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

Zepeda is a farm laborer contractor that provides employees to assist grape growers, including AVI and RBI.[8]  The employees perform various tasks for AVI and RBI, often referred to in the record as "seasonal activit[ies]."  The superior court summarized the evidence pertaining to the seasonal activities that the employees perform for AVI and RBI as follows:

> "Deputy Labor Commissioner ('DLC') Martinez testified
> that she issued an 'Order to Appear' . . . at which time
> [Zepeda's representatives] explained the various grape

---

do not seek affirmative relief beyond the judgment, and they are not aggrieved by the superior court's judgment granting a writ directing the Division to dismiss all of the wage citations against the Employers with prejudice.  (See *1041 20th Street, LLC, supra*, 38 Cal.App.5th at p. 32, fn. 3.)  Accordingly, we dismiss the Employers' cross-appeals.

Further, the Employers were not required to file cross-appeals to advance the arguments that they raise in their cross-appeal as alternative grounds for affirming the judgment.  (See, e.g., *1041 20th Street, LLC, supra*, 38 Cal.App.5th at p. 32, fn. 3; *Hermosa Beach Stop Oil Coalition v. City of Hermosa Beach* (2001) 86 Cal.App.4th 534, 548, fn. 8 ["Macpherson's cross-appeal seeks review of two adverse rulings by the trial court that, if reversed, would each provide an alternative basis for affirming the trial court's decision to deny Stop Oil's request for declaratory and injunctive relief.  Both of these grounds for affirmance are properly urged . . . without the need for a cross-appeal"].)  However, in light of our affirmance of the superior court's judgment on the grounds in the text, we need not, and do not, consider the Employers' arguments raised in their cross appeal as alternative grounds for affirmance of the superior court's judgment.

[8]     In addition to AVI and RBI, the Division issued a citation to an entity, Sun World International, LLC (Sun World), another client employer of Zepeda.  However, Sun World and the Division reached a settlement prior to the completion of the proceedings in the superior court.  Thus, Sun World is not a party to proceedings in this court.

growing [seasonal activities]9 to include pruning and
ty[ ]ing in the winter, suckering in the spring, followed by
leafing and harvesting in the late spring and summer.
[Citations.]  DLC Martinez testified that when she asked if
there were different periods of work for each seasonal
activity, [Zepeda's representatives] admitted that the
workers would stop work after each seasonal activity and
would return to work when the next seasona[l] activity
commenced.  [Citation.]  DLC Martinez further testified
that when she asked [one of Zepeda's representatives] how
workers were paid at the end of each seasonal activity,
[Zepeda's representatives] stated that the workers were
paid on the next payday and not at the end of the seasonal
activity."10

The Division collected evidence pertaining to when each seasonal
activity ended on various dates between 2014 and 2016 and the dates on
which Zepeda issued paychecks to employees.  The Division later prepared
audits based on this evidence.  It is undisputed that the audits revealed that,
with respect to each seasonal activity, Zepeda paid all of the employees at
least the minimum wage at or before the employee's regular payday.11

9    We have replaced the word "seasons" used by the superior court in this
portion of its order with "seasonal activities" for purposes of clarity.  We use
the term "seasonal activity" to refer to activities that occur *within* a grape
growing "season."  The superior court noted that several witnesses testified
during the administrative proceedings that the "grape growing season
[starts] in December with [the seasonal activity of] pruning and end[s] in July
or August with the [seasonal activity of] harvest."

10   As noted in footnote 5, *ante*, we assume for purposes of this decision
only, that the superior court properly determined "that seasonal agricultural
workers are 'discharged' for purposes of Labor Code sections 201 and 203 for
any period in which they are laid off between seasonal tasks."

11   Specifically, on page 18 of its opening brief, the Division writes:

"In all but one of 15 audits the employees were paid early,
before the regular pay date.  [Citations.]  Only the single

However, Zepeda frequently paid wages a few days after the employee's last day of work completing a seasonal activity.[12]

B. *Procedural background*

    1. *The wage citations*

In November 2016, the Division issued four section 1197.1, subdivision (b) minimum wage citations to the Employers imposing the following penalties and liquidated damages: (1) minimum wage penalties pursuant to section 1197.1;[13] (2) minimum wage liquidated damages pursuant to section 1194.2;[14] and (3) section 203 waiting penalties.[15] The Division issued one citation solely to Zepeda, and issued the other three citations jointly to

---

        person in the audit for Sun World pruning 2016 was paid on the regular pay date."

    Further, the Division has never argued that the wages that the Employers paid were below minimum wage.

[12] For example, the record contains a spreadsheet prepared by the Division that refers to AVI's seasonal activity of "tying." One row on the spreadsheet contains the employee's name, a "[l]ay-[o]ff [d]ate" of January 22, 2014 and a "[c]heck [d]ate" of January 27, 2014. Similar spreadsheets are contained in the record for other seasonal activities and time periods for AVI, RBI and Sun World.

[13] As noted in part III.B.3.a.ii, *post*, section 1197.1, subdivision (a) provides generally for a $100-dollar civil penalty for any initial intentional violation of the minimum wage laws.

[14] Section 1194.2, subdivision (a) provides in relevant part, "In any action under Section . . . 1197.1 to recover wages because of the payment of a wage less than the minimum wage . . . , an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."

[15] As noted in part I, *ante*, section 203 establishes a penalty for failing to promptly pay final wages.

Zepeda and either Sun World, AVI or RBI.[16]  The total liquidated damages and penalties imposed in the citations were  $150,856.75 (Zepeda);  $78,911.45 (Zepeda and Sun World);  $61,990 (Zepeda and AVI); and $66,347 (Zepeda and RBI).

 2. *The Employers[17] contest the citations in administrative proceedings*

The Employers contested the citations on numerous grounds in administrative proceedings before a hearing officer.[18]  After briefing and an evidentiary hearing, the hearing officer issued a decision affirming in part the Division's imposition of penalties.[19]  As relevant to the dispositive issue in this appeal, the hearing officer concluded that the Employers had committed minimum wage violations that supported the issuance of the citations.  In reaching this conclusion, the hearing officer reasoned:

> "The [Division] relies on *Biggs v. Wilson* 1 F.3d 1537 (9th Cir. 1993) [(*Biggs*)], a case under the federal Fair Labor Standards Act (FLSA) for the proposition that the late payment of wages constitutes a minimum wage violation. The wages were paid late because they were not paid in

[16]   Although not material to the issue on appeal, the citation that the Division issued solely to Zepeda did not impose section 1197.1 minimum wage penalties, but did impose section 1194.2 minimum wage liquidated damages and section 203 waiting time penalties.

[17]   Sun World also initially contested the citation issued to it.  However, as discussed in footnote 8, *ante*, Sun World subsequently entered into a settlement agreement with the Division during proceedings in the superior court.

[18]   Section 1197.1, subdivision (c)(1) authorizes a person to request an administrative hearing to contest a section 1197.1 citation.

[19]   For reasons not relevant to this appeal, the hearing officer eliminated the award of liquidated damages with respect to all of the citations and reduced the amount of minimum wage penalties and waiting time penalties.

9

conformity with . . . section[s] 201 and 202, a wage fixed by statute. The employees are certainly underpaid when they receive nothing. Here, they were unpaid on the due date for wages, thus they were underpaid for purposes of assessing a penalty for failure to pay the minimum wage."

3. *The Employers' petition for writ of administrative mandate*

The Employers filed a petition for writ of administrative mandate in the Riverside County Superior Court in which they requested that the superior court vacate the hearing officer's decision and order the Division to dismiss the wage citations. [20] The employers raised numerous grounds for relief in their petition. As relevant to this appeal, the Employers argued:

> "The Wage Citations were improperly issued here because Zepeda did not cause any employees to be paid a wage less than the minimum—a prerequisite for issuing citations and recovering penalties under . . . section 1197.1, which gives the Division authority to investigate, issue citations, and recover damages and penalties when an employee has been paid less than minimum wage, and allows for an additional penalty to be assessed each pay period for which the employee was underpaid. [(§ 1197.1, subd. (a).)] The Division overstepped its authority under Section 1197.1 because Zepeda did not pay less than the minimum wage. No court has ever approved assessment of a civil minimum wage penalty under . . . section 1197.1 when minimum wages have actually been paid."

4. *The superior court's ruling on the petition*

After briefing and a hearing, the superior court confirmed its tentative order granting the petition and ordering the dismissal of all of the wage

---

[20] Section 1197.l, subdivision (c)(2) provides for review of the hearing officer's decision on a section 1197.1 citation appeal by way of writ of mandate.

citations.  The superior court also entered a formal order granting the

Employers' petition.[21]

With respect to the dispositive issue in this appeal, the superior court

rejected the Division's argument that the failure to pay wages in accordance

with sections 201 and 202 constitutes a minimum wage violation, reasoning

in part:

> "[The Employers] assert that it is undisputed that all
> employees were paid minimum wages.  Division asserts
> that late payment of wages constitutes a minimum wage
> violation and that wages were paid late pursuant to the
> provisions of . . . sections 201 and 202.  The hearing officer
> relied on *Biggs*[, *supra*,] 1 F.3d 1537 in finding that each
> day wages were late meant employees were being paid
> nothing and therefore were not receiving minimum wage.
>
> " . . . *Biggs* notably is not a case interpreting California law,
> but rather addressed whether the State of California
> violated the minimum wage provisions of the [FLSA] when
> it paid wages 14-15 days late because there was no state

---

[21]     Both the confirmed tentative order and the formal order state, "The
petition is denied in part and granted in part."  However, the superior court
denied the petition only insofar as the court rejected some of *grounds* that the
Employers offered for granting the petition.  At the conclusion of the hearing
on the petition, the Division's counsel asked, "So, again, your Honor, just to
be clear, the Court is dismissing all of the wage citations?"  The court
responded affirmatively.  In addition, the court's formal order directs the
Division to vacate the hearing officer's decision and to dismiss the wage
citations with prejudice.  Accordingly, in substance, the superior court
granted the Employers' petition in its *entirety*, as is made clear by the
superior court's judgment, which ordered the dismissal of all of the wage
citations, with prejudice.

Ｔhe superior court's denial "in part," of the Employers' petition may
have led the Employers to conclude that they were required to file cross-
appeals.  However, as explained in footnote 7, *ante,* in substance, although
the Employers take issue with some of the superior court's rulings, they
ultimately seek nothing more in their cross-appeals than affirmance of the
superior court's judgment in their favor.

budget and therefore no funds appropriated for the payment of salaries on payday. In other words[,] the employees received no paycheck on payday, despite the fact they had worked. Therefore, on payday they did not receive a paycheck representing at least the payment of minimum wage. This is a distinctly different scenario tha[n] the facts of this case. Furthermore, the court's ruling under the FLSA has no persuasive value in determining whether or not the provisions of [section] 1197.1 apply.

" . . . The language of [section] 1197.1 is clear and unambiguous and states that there is only a violation if a wage less than the minimum wage is paid. Here, there is no dispute concerning whether or not employees were paid a minimum wage. . . . Accordingly, the Court finds that the hearing officer's imposition of penalties pursuant to [section] 1197 .1 did not comport with the law."[22]

5. *The judgment*

In December 2018, the superior court entered a judgment in favor of the Employers, granting a peremptory writ of mandate directing the Division to set aside the hearing officer's decision and ordering the Division to dismiss the wage citations with prejudice.

6. *The Division's appeal*

The Division timely appeals from the judgment.[23]

---

[22] We quote from the superior court's tentative order, which the court confirmed at the hearing.

[23] As noted in part I, *ante*, the Employers filed cross-appeals that we dismiss for reasons stated in footnote 7, *ante*.

This appeal was initially filed in Division Two of the Fourth Appellate District. While the appeal was pending, that court granted an application from the Western Growers Association, California Fresh Fruit Association, California Farm Bureau Federation, California Farm Labor Contractor Association, Grower Shipper Association of Santa Barbara and San Luis Obispo Counties, and the Ventura County Agricultural Association to file an amicus brief in support the Employers.

III.

DISCUSSION

*The superior court properly ordered the Division to dismiss the section 1197.1 minimum wage citations because the Employers did not commit any minimum wage violations*

The Division claims that the superior court erred in dismissing the section 1197.1 minimum wage citations. Specifically, the Division contends that the superior court erred in concluding that the Employers did not commit any minimum wage violations that would support the Division's issuance of such citations.

As it argued in the administrative proceedings and the superior court, the Division reasons that the Employers' failure to "timely" pay minimum wages to discharged workers[24] constituted *minimum wage* violations that "trigger[ed] application of Section 1197.1 and allow[ed] the [Division] to

In October 2020, the Supreme Court transferred the matter to this court. We have considered the amicus brief, as well as the Division's answer to the amicus brief.

[24] As noted in footnote 5, *ante*, we *assume* solely for the purposes of our analysis that the superior court properly upheld the hearing officer's determination that the employees in this case were discharged within the meaning of section 201, "at the end of each seasonal activity."

While this appeal was pending, the Employers filed a motion for judicial notice requesting that we take judicial notice of various documents that the Employers contend pertain to the issue of whether the employees were discharged within the meaning of section 201. Because we conclude that the minimum wage issue discussed in the text is dispositive and thus do not resolve the issue of whether the employees were discharged within the meaning of section 201, the documents are "not relevant to disposition of this appeal." We therefore deny the Employers' motion for judicial notice. (*Unzueta v. Akopyan* (2019) 42 Cal.App.5th 199, 221, fn. 13 [noting that a reviewing court may deny a request for judicial notice where the documents for which notice is sought are not relevant to the dispositive issues on appeal].)

13

proceed using the citation process." Although the Division acknowledges in its brief that all of the employees at issue in this case *were paid minimum wages at or before the regular payday*, the Division contends that the Employers' failure to pay wages on the dates that the employees were discharged, or within 72 hours of when they quit, subjected the Employers to waiting time penalties under section 203, *and* constituted independent minimum wage violations that supported the issuance of section 1197.1 citations.

The Employers maintain that they did not commit any minimum wage violations because it is undisputed that they paid all of their employees at least the minimum wage by payday. The Employers contend that there is no legal authority—i.e., no statute, regulation, case law or otherwise—that supports the Division's claim that the failure to pay final wages on the date employees are discharged or within 72 hours of when employees quit constitutes a *minimum wage* violation.[25] Further, the Employers argue that, because the existence of a minimum wage violation is a prerequisite to the Division's authority to issue a citation under section 1197.1, the superior court properly ordered the Division to dismiss the section 1197.1 citations.

A. *Standard of review*

"On appeal of a trial court's ruling on a petition for writ of administrative mandate, we review de novo issues of statutory interpretation. . . ." (*Prang v. Amen* (2020) 58 Cal.App.5th 246, 253, review granted Mar. 17, 2021, S266590 (*Prang*).)

---

[25] As noted in footnote 11, *ante*, the Division has never contended that the Employers paid wages below the minimum wage. Rather, the Division argues that the Employers violated the minimum wage law by failing to pay minimum wages on or before the date that such wages were purportedly due.

B.  *Governing Law*

   1. *General principles of statutory interpretation*

   The Division's claim requires us to interpret the statutory scheme governing the payment of minimum wages and the timing of the payment of wages.  Well established principles of statutory interpretation guide our resolution of the Division's claim:

> "The general principles that guide interpretation of a statutory scheme are well[-]settled.  [Citation.]  'Our function is to ascertain the intent of the Legislature so as to effectuate the purpose of the law.  [Citation.]  To ascertain such intent, courts turn first to the words of the statute itself [citation], and seek to give the words employed by the Legislature their usual and ordinary meaning.  [Citation.]  When interpreting statutory language, we may neither insert language which has been omitted nor ignore language which has been inserted.  [Citation.]  The language must be construed in the context of the statutory framework as a whole, keeping in mind the policies and purposes of the statute [citation], and where possible the language should be read so as to conform to the spirit of the enactment.  [Citation.]' " (*Prang, supra*, 58 Cal.App.5th at pp. 253–254.)

   " ' " ' "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." ' " ' " (*Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190.)

   2. *Principles of statutory and regulatory interpretation applicable to wage and hour provisions*

   "In California, 'wage and hour claims are today governed by two complementary and occasionally overlapping sources of authority:  the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC [Industrial Wage Commission].' " (*Donohue*

15

*v. AMN Services, LLC* (2021) 11 Cal.5th 58, 66 (*Donohue*) " 'The IWC is the state agency empowered to promulgate wage orders, which are legislative regulations specifying minimum requirements with respect to wages, hours, and working conditions.' " (*Ibid.*) " 'The IWC's wage orders are to be accorded the same dignity as statutes. They are "presumptively valid" legislative regulations of the employment relationship [citation], regulations that must be given "independent effect" separate and apart from any statutory enactments [citation].' " (*Ibid.*)

The *Donahue* court also explained:

> " 'When construing the Labor Code and wage orders, we adopt the construction that best gives effect to the purpose of the Legislature and the IWC. [Citations.] Time and again, we have characterized that purpose as the protection of employees—particularly given the extent of legislative concern about working conditions, wages, and hours when the Legislature enacted key portions of the Labor Code. [Citations.] In furtherance of that purpose, we liberally construe the Labor Code and wage orders to favor the protection of employees.' " (*Donohue, supra*, 11 Cal.5th at pp. 66–67.)

3. *Relevant wage and hour law*

    a. *Minimum wage provisions*

        i. *Wage Order No. 14-2001's specification that an employer must pay agricultural employees minimum wages on an established payday*

Wage Order No. 14-2001 applies to all nonexempt persons employed in an agricultural occupation. (See Cal. Code. Regs., tit. 8, § 11140, subd. (1).) Section 4 of the order is titled "Minimum Wages," and establishes the amount of the minimum wage and the time at which minimum wages must be paid. Specifically, with respect to the timing of the payment of minimum wages,

California Code of Regulations, title 8, section 11140, subdivision (4)(B) provides:

> "Every employer shall pay to each employee, *on the established payday for the period involved*, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." (Italics added.)

### ii. *Section 1197.1's establishment of liability for failing to pay the minimum wage*

Section 1197.1, subdivision (a) specifies liability for an employer who pays an employee less than the minimum wage, as follows:

> "(a) Any employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an applicable state or local law, or by an order of the commission, shall be subject to a civil penalty, restitution of wages, liquidated damages payable to the employee, and any applicable penalties imposed pursuant to Section 203 as follows:

> "(1) For any initial violation that is intentionally committed, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid. This amount shall be in addition to an amount sufficient to recover underpaid wages, liquidated damages pursuant to Section 1194.2, and any applicable penalties imposed pursuant to Section 203."

### iii. *The Division's authority to issue a citation under section 1197.1, subdivision (b) for failure to pay minimum wages*

Section 1197.1, subdivision (b) outlines the Division's authority to issue a citation for failure to pay minimum wages and provides in relevant part:

> "If, upon inspection or investigation, the [Division] determines that a person has paid or caused to be paid a

17

wage less than the minimum under applicable law, the [Division] may issue a citation to the person in violation. . . .  The [Division] shall promptly take all appropriate action, in accordance with this section, to enforce the citation and to recover the civil penalty assessed, wages, liquidated damages, and any applicable penalties imposed pursuant to Section 203 in connection with the citation."

b. *Statutory provisions pertaining to the timing of final wage payments*

i. *Statutes governing the timing of payment of final wages to an employee who is discharged or quits*

Section 201, subdivision (a) specifies when the final wages of an employee who is discharged become due and payable.  The statute provides in relevant part:

"If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

Section 202, subdivision (a) provides the time at which the final wages of an employee who quits become due and payable.  The statute provides:

"(a) If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

18

ii. *Section 203's establishment of waiting time penalties for failing to promptly pay final wages to an employee who is discharged or quits*

Section 203, subdivision (a) provides that an employer is subject to a penalty for willfully failing to pay final wages in accordance with sections 201 or 202. The statute provides in relevant part:

"(a) If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, . . . [or] 202 . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days. An employee who secretes or absents themselves to avoid payment to them, or who refuses to receive the payment when fully tendered to them, including any penalty then accrued under this section, is not entitled to any benefit under this section for the time during which the employee so avoids payment."

iii. *Section 205's requirement of weekly paydays for farm labor contractor employees*

Section 205 requires that farm labor contractors establish weekly paydays for the payment of wages to their workers.

"[W]ages of workers employed by a farm labor contractor shall be paid on payroll periods at least once every week on a business day designated in advance by the farm labor contractor. Payment on such payday shall include all wages earned up to and including the fourth day before such payday."

c. *Case law requiring the payment of minimum wages under the FLSA (29 U.S.C. § 201 et seq.) by payday*

In *Biggs, supra*, 1 F.3d 1537, the Ninth Circuit considered "whether California violated the minimum wage provisions of the [FLSA], by paying

19

wages 14–15 days late because there was no state budget, and thus no funds appropriated for the payment of salaries, on payday." (*Id.* at p. 1538.) In considering this question, the *Biggs* court noted that "[s]tate officials correctly point out that the FLSA does not in terms say that a minimum wage must be paid promptly." (*Id.* at p. 1539.) Nevertheless, construing the "statutory scheme as a whole," (*ibid.*) the *Biggs* court reasoned that the "FLSA is violated unless the minimum wage is paid on the employee's *regular payday.*" (*Id.* at p. 1541, italics added.) The *Biggs* court reasoned in part:

> "The FLSA provides for the recovery of unpaid minimum wages, unpaid overtime compensation, and liquidated damages; and has its own statute of limitations for private enforcement. These provisions necessarily assume that wages are due at some point, and thereafter become unpaid. [¶] . . . [¶] . . . . Unless there is a due date after which minimum wages become unpaid, imposing liability for both unpaid minimum wages and liquidated damages would be meaningless.
>
> "The statute must therefore contemplate a time . . . when minimum wages become 'unpaid.' 'Unpaid minimum wages' have to be 'unpaid' as of some distinct point, otherwise courts could not compute either the amount of wages which are unpaid, or the additional 'equal' amount of liquidated damages. The only logical point that wages become 'unpaid' is when they are not paid at the time work has been done, the minimum wage is due, and wages are ordinarily paid—*on payday.*" (*Biggs, supra*, at pp. 1539–1540, italics added.)

In *White v. Davis* (2003) 30 Cal.4th 528 (*White*), the California Supreme Court applied *Biggs* in considering whether, during another state budget impasse, California was nevertheless required to pay state employees covered by the FLSA their full wages on payday, or instead, merely required to pay

20

employees minimum wages to comply with the federal statute. (*White, supra*, at pp. 575–579.) While noting that there was "some ambiguity in the language of the opinion in *Biggs*" (*id.* at p. 576) as to the resolution of this question, the *White* court concluded, "When the opinion in *Biggs* . . . is read as a whole . . . it is clear that the opinion properly must be understood as holding that an employer complies with the FLSA so long as it pays those employees who are subject to the FLSA at the minimum wage rate on payday, and not that the FLSA requires an employer to pay employees their regular wage on payday." (*Id.* at p. 577, italics omitted.) The *White* court reasoned in part:

> "The basic reasoning of the *Biggs* decision is that the minimum wage required by the FLSA must be paid promptly, not that the FLSA requires the payment of an employee's salary above the minimum wage. In describing the provisions of the FLSA, the court's opinion in *Biggs* states: 'The FLSA provides for the recovery of unpaid minimum wages, unpaid overtime compensation, and liquidated damages . . . . These provisions necessarily assume that wages are due at some point, and thereafter become unpaid.' (1 F.3d at p. 1539.) Nothing in the FLSA provides for the recovery of unpaid regular wages above the minimum wage. Furthermore, after explaining why it believed the language of the statute itself was inconsistent with the state's contention that the statute contained no prompt payment requirement, the opinion in *Biggs* states: 'Holding that the FLSA is violated unless the minimum wage is paid on the employee's regular payday also comports with such case law as there is.' (*Id.* at p. 1541, italics added.) Finally, in rejecting the argument that the existence of a budget impasse should relieve the state of its obligation under the FLSA, *Biggs* states: 'The FLSA does not require California to pass a budget on time; it only requires California to do what all employers must do—*pay its employees the minimum wage on payday*.' (1 F.3d at p. 1543, italics added.)" (*Id.* at pp. 576–577, some italics omitted.)

C. *The Employers did not commit any minimum wage violations that would support the issuance of a section 1197.1 citation because it is undisputed that the Employers paid all employees the minimum wage on or before payday*

In considering the Division's contention that the Employers' failure to pay wages in accordance with the prompt final wage payment mandates of sections 201 and 202 constituted *minimum wage* violations that supported the issuance of section 1197.1 citations we begin our analysis with the text of the relevant wage order and statutes. (*Prang, supra*, 58 Cal.App.5th at p. 253 [in interpreting a statute "courts turn first to the words of the statute itself"].) Wage Order No. 14 specifies exactly when an employer must pay minimum wages. As noted in part III.B.3.a.i, *ante*, the wage order provides in relevant part, "Every employer shall pay to each employee, *on the established payday for the period involved*, not less than the applicable minimum wage for all hours worked in the payroll period . . . ." (Cal. Code. Regs., tit. 8, § 11140, subd. (4)(B), italics added.) Section 205 in turn requires the establishment of weekly pay periods for the employees of farm labor contractors.

While section 203 provides that an employer who "willfully fails to pay, . . . in accordance with Sections 201, . . . [or] 202 . . . any wages of an employee who is discharged or who quits," is subject to "a penalty," there is nothing in the text of any of the relevant statutes or Wage Order No. 14 that would make the failure to pay final wages in accordance with sections 201 (discharge) or 202 (quit) an independent failure to pay minimum wages. Thus, while the failure to pay final wages to an employee who is discharged or quits in accordance with sections 201 or 202 triggers waiting time penalties under section 203, it does not follow that the failure to pay final

22

wages in accordance with sections 201 or 202 constitutes a failure to pay minimum wages in violation of Wage Order No. 14.  To conclude otherwise, would subject an employer to a *double* penalty for a *single* violation—namely payment of final wages later than section 201 or 202 permits, with no failure to pay the minimum wage.[26]

The Division's interpretation is inconsistent with the statutory scheme. The Division acknowledges that section 203 waiting time penalties cannot be imposed by way of a section 1197.1 citation in the absence of an accompanying minimum wage violation.[27]  If the Legislature wanted to grant the Division the authority to issue citations for section 203 waiting-time penalties *in the absence of* a minimum wage violation, it could have easily done so.  In fact, the Legislature *did* grant the Division the authority to issue a citation to *directly* enforce section 210, which requires timely wage payments during ongoing employment, *without* the existence of a minimum wage violation.  (See § 210, subd. (b) [providing that the penalty for failing to pay wages pursuant to various Labor Code provisions, including weekly wage payments pursuant to section 205, "shall either be recovered by the employee as a statutory penalty pursuant to Section 98[[28]] or *by the [Division] as a*

---

[26]    We emphasize that it is undisputed that all employees in this case were paid minimum wages by their regular payday.  Thus, we have no occasion to consider whether an employer's *failure* to pay final minimum wages *by payday* to an employee who is discharged or quits would constitute a separate violation of Wage Order No. 14 that would support the issuance of a citation under section 1197.1.

[27]    The Division states in its brief, *"[O]nce someone has caused a payment of less than the minimum wage*, California can use the citation process to enforce waiting-time penalties.*"  (Italics added.)

[28]    Section 98 establishes a set of "remedial procedures for adjudicating wage claims, enforced by the [Division] under the direction of the

23

*civil penalty through the issuance of a citation*" (italics added)].)  However, unlike section 210, section 203 does *not* authorize the Division to issue a citation.  Instead, the Legislature limited the Division's authority to issue citations for section 203 waiting time penalties to instances in which there is an underlying minimum wage violation that would support the issuance of a section 1197.1 minimum wage citation.[29]

However, under the Division's interpretation of the statutory scheme, the failure to pay minimum wages on the date wages are due for purposes of section 203 is *itself* a minimum wage violation that supports the issuance of section 1197.1 citation.  Such an interpretation would eviscerate the prerequisite of an independent minimum wage violation provided for by the Legislature in section 1197.1 and would grant the Division the authority to *directly* enforce waiting time penalties in section 203—authority that the Legislature did not provide.

In addition to the lack of support for the Division's interpretation in the text or structure of the relevant statutes, there is *no* authority supporting the Division's unique interpretation of these provisions.  No California or federal case has held that a *minimum wage* violation occurs where an employer fails to timely pay final wages upon the discharge of an employee or within

---

commissioner." (*Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 946.)  Section 98's remedial procedures are triggered by an *employee's* filing of a complaint with the Labor Commissioner.  (See § 98.)

[29]    We emphasize that an *employee* may seek waiting time penalties by way of a civil action or the administrative hearing procedure discussed in footnote 28, even in the absence of a minimum wage violation.  However, it is undisputed that the *Division* may impose section 203 waiting time penalties by way of section 1197.1 citation only in conjunction with an accompanying minimum wage violation.

72 hours of an employee quitting, where the employer has ultimately paid the employee the minimum wage on or before the employee's regular payday, albeit not in accordance with the prompt payment requirements of sections 201, 202, and 203. Similarly, no California or federal statute, regulation, Division policy manual or opinion letter, nor any treatise that the Division has cited or that our own research has uncovered, supports the proposition that the payment of final wages that meet or exceed the minimum wage, by the employee's regular payday, constitutes a failure to pay minimum wages. Given that minimum wage orders and waiting time penalties have been the law of California for a century,[30] the absence of any supporting authority for the Division's interpretation of such longstanding law undermines the Division's interpretation.

Further, *White* and *Biggs* are the *only* authorities that the Division cites in support of its contention that the Employers committed minimum wage violations. Neither case support the Division's contention.[31] In *Biggs*,

---

[30] In 1913, the California Legislature established the IWC to adopt "minimum wages, maximum hours, and standard working conditions for the protection of women and minors. [fn. omitted.] The first minimum wage orders were issued in early 1916, and by 1923 minimum wage orders had been adopted to cover most industries." (*Ward v. Tilly's, Inc.* (2019) 31 Cal.App.5th 1167, 1180.)

"The Legislature first enacted a provision similar to sections 201 and 202 in 1911. [Citation.] In 1915, the Legislature provided for waiting-time penalties for a violation of this provision. [Citation.] These provisions were repealed and reenacted in 1919. [Citation.] When the Legislature established the Labor Code in 1937, it adopted the 1919 provision governing prompt payment as sections 201 and 202, and the waiting-time penalty provision as section 203, both with minor modifications." (*McLean v. State of California* (2016) 1 Cal.5th 615, 619.)

[31] The Division cites these authorities in a subsection of its brief titled, "Failure to pay wages timely is failure to pay minimum wages." While the

25

as discussed in part III.B.3.c, *ante*, the Ninth Circuit considered "whether the FLSA contains an implicit requirement that [minimum] wages be paid promptly" to state employees during a time when no state budget had been enacted (*Biggs, supra*, 1 F.3d at p. 1538), even though the FLSA does not expressly provide a date on which such wages must be paid. After considering the FLSA as a whole, the *Biggs* court concluded, "the FLSA is violated unless the minimum wage is paid on the employee's regular *payday*." (*Biggs, supra*, at p. 1541, italics added.) In *White*, the California Supreme Court applied *Biggs* in concluding that, during another budget impasse, the state satisfies the FLSA by paying workers covered by the statute the minimum wage, rather than their full salaries. (See *White, supra*, 30 Cal.4th at p. 576.) In so concluding, the *White* court restated the *Biggs* court's conclusion that, under the FLSA, "an employer complies with the FLSA so long as it pays those employees who are subject to the FLSA at the minimum wage rate *on payday*." (*White, supra*, at p. 577, italics altered.)

There is nothing in either *Biggs* or *White* that would support the conclusion that the failure to pay final wages in accordance with sections 201

---

Division cites other authorities in support of its section 1197.1 argument, none is relevant to the question of whether the Employers committed minimum wage violations. The bulk of the Division's section 1197.1 argument addresses the *undisputed* point that the Division may impose waiting time penalties in a section 1197.1 citation where the citation also imposes penalties for a minimum wage violation. The Employers acknowledge in their brief that, "The [L]egislature's changes to Labor Code section 1197.1 [in 2014 through the enactment of Assembly Bill No. 1723] gave the Division the ability to issue citations for . . . waiting time penalties *when there is a minimum wage violation*." (Italics added.) (See Stats. 2014, ch. 886, § 1.) However, the Employers contend that the superior court properly determined that there were *no* such minimum wage violations in this case. For the reasons discussed in the text, we agree with the Employers.

26

or 202 constitutes a *minimum wage* violation. Most fundamentally, *Biggs* and *White* do not support the Division's position because neither case involved any question concerning the timing of final wages due when an employee is discharged or quits. Further, both *Biggs* and *White* hold that minimum wages under the FLSA are due by *payday*, and it is undisputed that the Employers paid all minimum wages by, as the Division states in its brief, "the regular pay date."[32] Thus, while the Division correctly notes that under "*White*, all employers must pay their employees the minimum wage *on payday*," the Division fails to establish that the Employers failed to pay minimum wages by payday.

Out-of-state authority is also contrary to the Division's position. In *Hurger v. Hyatt Lake Resort, Inc.* (2000) 170 Or.App. 320, 326 (*Hurger*), the Court of Appeals of Oregon considered an issue nearly identical to the issue presented in this appeal. The *Hurger* court considered whether plaintiffs were correct that "because defendant's payment of plaintiffs' wages— including the minimum wage component—was untimely for purposes of [Oregon's payment of final wages statute] ORS 652.140,[33] the minimum

---

[32]    Unlike the FLSA, as noted *ante*, Wage Order No. 14 expressly provides the day on which minimum wages are due–payday. (Cal. Code. Regs., tit. 8, § 11140, subd. (4)(B) ["Every employer shall pay to each employee, *on the established payday for the period involved*, not less than the applicable minimum wage for all hours worked in the payroll period" (italics added)].) Thus, Wage Order No. 14 expressly provides that minimum wages are due on payday, a requirement that the *Biggs* court concluded was implicit for purposes of minimum wages under the FLSA.

[33]    Like sections 201 and 202, ORS 652.140 specifies the required timing of the payment of final wages when an employee is discharged or quits. The *Hurger* court stated that ORS 652.140 provides in relevant part:

27

wage requirements of ORS chapter 653[34] were *ipso facto* violated simultaneously." (*Id.* at p. 324.) The *Hurger* court rejected this argument,

> "(1) Whenever an employer discharges an employee or where such employment is terminated by mutual agreement, all wages earned and unpaid at the time of such discharge or termination shall become due and payable not later than the end of the first business day after the discharge or termination.
>
> "(2) When an employee who does not have a contract for a definite period quits employment, all wages earned and unpaid at the time of quitting become due and payable immediately if the employee has given to the employer not less than 48 hours' notice, excluding Saturdays, Sundays and holidays, of intention to quit employment. If notice is not given to the employer, the wages shall be due and payable within five days, excluding Saturdays, Sundays and holidays, after the employee has quit, or at the next regularly scheduled payday after the employee has quit, whichever event first occurs." (*Hurger, supra*, 170 Or.App. at p. 322, fn. 1.)

Like section 203, ORS 652.150 provides for a waiting time penalty for failing to pay final wages promptly. The *Hurger* court noted that ORS 652.150 provides in relevant part:

> " 'If an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 . . . , then, as a penalty for such nonpayment, the wages or compensation of such employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced; provided, that in no case shall such wages or compensation continue for more than 30 days from the due date[.]' " (*Hurger, supra*, at p. 322, fn. 1.)

34 The *Hurger* court specified the relevant portions of Oregon's minimum wage statutes as follows:

> "ORS 653.025 provides, as relevant:

28

reasoning in part that plaintiffs' contention was not supported by the text or purpose of the final wage payment and minimum wage payment statutes:

> "When a worker's employment ceases, of course, *all* wages—including the minimum wage component— must be paid within the times specified by ORS 652.140. However, plaintiffs argue that a payment that would otherwise have satisfied the minimum wage statutes in both its timing and amount becomes *separately* untimely and *separately* sanctionable, if the employee has been terminated and the final payment is not made within the time limits of ORS 652.140. In our view, plaintiffs' argument is a tail-wagging-the-dog exercise that is not supported by the text of the statute. ORS 652.140 is not a part of and is not designed to implement the minimum wage statutes." (*Hurger, supra*, 170 Or.App. at p. 325.)

> The *Hurger* court added:

> "Further, nothing in the text or context of the relevant statutes lends support to plaintiffs' supposition that, because the minimum wage component is subsumed within the total wages that are due an employee, a payment of final wages to a terminated employee that does not meet

---

> 'Except as provided by ORS 652.020 and the rules of the Commissioner of the Bureau of Labor and Industries issued under ORS 653.030 and 653.261, for each hour of work time that the employee is gainfully employed, no employer shall employ or agree to employ any employee at wages computed at a rate lower than [$6.00].'

> "ORS 653.055(1) provides:

> 'Any employer who pays an employee less than the wages to which the employee is entitled under ORS 653.010 to 653.261 is liable to the employee affected:

> '(a) For the full amount of the wages, less any amount actually paid to the employee by the employer; and

> '(b) For civil penalties provided in ORS 652.150.' " (*Hurger, supra*, at p. 322, fn. 1.)

29

the time limits of ORS 652.140 is separately or independently untimely for purposes of or is violative of the minimum wage statutes. . . .

"Stated summarily, plaintiffs offer, and we discern, no convincing reason for concluding that an employer violates the minimum wage statutes by paying an employee an amount that satisfies the minimum wage statutes and at a time that satisfies those statutes, simply because the minimum wage happens to be includable in a payment that is due at an earlier time under a different statute that applies for reasons that bear no relationship to the minimum wage provisions and that is enforceable by a penalty that is independent of those provisions." (*Hurger, supra*, 170 Or.App. at pp. 325–326.)

Similarly, as discussed above, there is nothing in the text or purpose of the relevant provisions of California's minimum wage law (section 1197.1 and Wage Order No. 14) or final wage payment statutes (sections 201, 202 and 203)[35] that would support the conclusion that an employer violates the minimum wage order by paying an employee an amount that satisfies the minimum wage order and at a time that satisfies that order, simply because the minimum wage happens to be part of final wages that are due at an

---

[35] The *Hurger* court's observation that Oregon's minimum wage and prompt payment statutes have distinct purposes is true, as well, under California law. " '[T]he purpose sought to be obtained by the fixing of minimum wages' was to provide compensation 'adequate to supply the necessary cost of proper living and to maintain the health and welfare of the employees.' " (*Rihn v. Franchise Tax Bd.* (1955) 131 Cal.App.2d 356, 362; see also *Martinez v. Combs* (2010) 49 Cal.4th 35, 54 [quoting ballot pamphlet in support of constitutional amendment authorizing the regulation of minimum wages to ensure that workers receive " 'a living wage—a wage that insures for them the necessary shelter, wholesome food and sufficient clothing' "].) In contrast, "[t]he purpose of section 203 is to compel the prompt payment of earned wages.' " (*Nishiki v. Danko Meredith, P.C.* (2018) 25 Cal.App.5th 883, 891.)

30

earlier time under the final wage payment statute.[36]  While an employer who fails to timely pay final wages under the final wage payment statute is subject to waiting time penalties, such an employer should not be subject to an additional penalty for failing to pay the minimum wage when the employer's payment complies with the minimum wage order.[37]

The Division also raises a series of straw man arguments, none of which demonstrates that the Employers committed a minimum wage violation.  For example, the Division states that the issue in this appeal is whether the failure to pay the minimum wage *before the issuance of a citation* constitutes a minimum wage violation that would support the issuance of a section 1197.1 citation.  This contention is unpersuasive because it is undisputed that the Employers paid all minimum wages on or before *payday* in accordance with California Code of Regulations, title 8, section 11140, subdivision (4)(B) (see fn. 26, *ante*).  Thus, we have no reason to consider whether the failure to pay minimum wages until *after* payday, but before the

---

[36]    The Division argues that the Legislature's expansion of minimum wage remedies for workers in statutes enacted beginning in 2011 supports its view. This contention is unpersuasive because there is nothing in any of the statutes or legislative history that the Division cites, or that our independent research has uncovered, that supports the Division's argument that an employer commits a minimum wage violation merely by failing to pay wages in accordance with section 201 or section 202.

[37]    The *Hurger* court specifically stated that it did not decide the question of whether an employer who *failed* to pay minimum wages by "the next regular payday," as required by Oregon law, violates the minimum wage statutes. (*Hurger, supra*, 170 Or.App. at p. 326, fn. 2.)  As we explained in footnote 26, *ante*, we also need not decide whether an employer's failure to pay final minimum wages *by payday* to an employee who is discharged or quits, would constitute a violation of Wage Order No. 14 because it is undisputed that that did not occur in this case.

issuance of a section 1197.1 citation, would constitute a minimum wage violation.[38]

The Division also suggests that to affirm the superior court's judgment would constitute a ruling that the Division cannot use the citation procedure (§ 1197.1) to impose waiting time penalties. ("This case of first impression asks the Court to decide that the 2014 amendments to Section 1197.1 allow California to use the citation process to enforce waiting-time penalties for late payment of the minimum wage.") (Fn. omitted.) Section 1197.1 clearly and expressly provides that waiting time penalties may be imposed in connection with a minimum wage citation issued pursuant to section 1197.1. (See § 1197.1, subd. (b) ["The [Division] shall promptly take all appropriate action, in accordance with this section, to enforce the citation and to recover . . . any applicable penalties imposed pursuant to Section 203 in connection with the citation"].) Thus, we do not conclude that waiting time penalties are *never* available in connection with a section 1197.1 citation. Rather, we conclude that the Employers did not commit a minimum wage violation and, thus, that there was no basis for the Division to properly issue minimum wage section 1197.1 citations in which waiting time penalties could also be imposed.[39]

---

[38] In a related argument, the Division contends that there is no requirement that there be a "continuing [minimum wage] violation" for a citation to be properly issued and that there is no provision permitting an employer to "cure" a minimum wage violation. We are unpersuaded. We do not conclude that there must be a continuing minimum wage violation or that an employer must be permitted the opportunity to cure a minimum wage violation. Rather, we conclude that the Employers did not commit any minimum wage violations in the first instance.

[39] The Division also argues that, "Judicial economy supports using citation procedures to enforce [s]ection 203 waiting time penalties." (Boldface omitted.) This argument is also premised on the notion that a decision in

Accordingly, we conclude that the superior court properly ordered the dismissal of the section 1197.1 minimum wage citations, given the lack of any minimum wage violations as to which the Division could properly issue such citations.

IV.

DISPOSITION

The judgment is affirmed. The Employers' cross-appeals are dismissed. In the interests of justice, each party is to bear its own costs on appeal.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.

---

favor of the Employers would mean that waiting time penalties may *never* be imposed in a section 1197.1 citation. Again, we reach no such conclusion. We conclude merely that the Division could not properly issue a minimum wage citation pursuant to section 1197.1 in this case because the Employers did not commit any minimum wage violations.